## HUGHES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9033.

Circuit Court of Appeals, Ninth Circuit.
May 29, 1939.

Latham, Watkins & Bouchard, Dana Latham, and A. R. Kimbrough, all of Los Angeles, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Newton K. Fox, and Clarence C. Dawson, Sp. Assts. to Atcy. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

This proceeding involves the taxability and extent thereof, of a gift by way of trust.

The taxpayer was, at the time of the creation of the trusts herein mentioned, a resident of California, and was 43 years old. The various parties interested in the trusts, with their ages at the time of creation of the trusts were as follows:

| PARTY | AGE |
| --- | --- |
| Mother | 73 |
| Father | 71 |
| Taxpayer | 43 |
| Wife | 29 |
| First Daughter | 1 |

On June 22, 1933, the taxpayer, by a trust instrument executed at Los Angeles, California, did "transfer, deliver and convey" certain securities having a market value of $55,600 to a bank in Topeka, Kansas, in trust, and empowered the trustee "to hold and retain any of the property coming into its hands hereunder in the same form of investment as that in which it is received by it" and "to sell or exchange the whole or any part of such property upon such terms and conditions as in its discretion may seem best under the circumstances, and to invest and reinvest any of the trust funds hereunder in such securities as Trustee in its discretion may deem wise and prudent".

The trust instrument provided that the trustee was to pay the entire net income to the grantor's mother during her life and "such amounts of the principal * * * as Trustee in its sole discretion may deem necessary or advisable for the comfort and support" of said mother. If the father predeceased the mother, then upon the latter's death, the trust was to terminate, and the principal of the trust estate was to be paid to the taxpayer. The taxpayer had an absolute right to the principal only if he survived both the mother and father. Upon the mother's death, if both the tax-

payer and father were living, one-half of the net income and "such amounts from principal of this trust fund \* \* \* as it in its sole discretion may deem necessary and advisable" was to be paid to each of them. If the taxpayer pre-deceased the mother, and the mother pre-deceased the father, then one-half of the net income, upon the mother's death, was to be paid to the wife, as it was in the case where the taxpayer survived the mother, but pre-deceased the father, in either of which events, upon the subsequent death of the father, the entire net income was to be paid to the wife. There were other provisions providing, in general, that the share the wife would receive, in any of the situations mentioned in the preceding sentence, was to be paid to the taxpayer's children upon the death of the wife.

The trust instrument further provided that "This trust shall be irrevocable", and it contained no provision for amendment of any of the trust provisions.

On June 29, 1933, taxpayer, by another trust instrument did "sell, transfer, and deliver" to a trust company in Boston, Massachusetts, certain securities having a market value of $96,088.14, in trust. The trustee had powers which were, probably, broader than those mentioned in the first agreement. The provisions regarding the beneficiaries' interests were the same as those in the first trust instrument. There was no provision in the second trust instrument for amendment of any of the trust provisions, and it was silent as to whether the trust was or was not revocable.

Based upon mortality tables, the value of the combined life estate of the mother and father at the time of the conveyances in trust was $45,620.57, and the separate value of the life estate of the father included in that amount was in excess of $5,000. A second daughter was born to the taxpayer on November 25, 1934.

In his gift tax return for the year 1933, the taxpayer reported the value of the gifts as $45,620.57, which was the value of the life estates mentioned. Inasmuch as § 504 of the Revenue Act of 1932, 47 Stats. 169, 247, 26 U.S.C.A. § 553, provided that the first $5,000 of gifts should not be included in the "total amount of gifts", and since § 505, 47 Stat. 247, 26 U.S.C.A. § 554, permitted a deduction of $50,000 as an exemption, the taxpayer reported no tax due. Respondent determined that the value of the gifts was $151,688.14, which

constituted the market value of the securities transferred, and assessed a deficiency.

The taxpayer petitioned the Board of Tax Appeals to redetermine the deficiency. An agreed statement of facts was submitted to the Board. It states that the taxpayer "established a trust" with each of the above-mentioned trustees, and attached thereto copies of the trust instruments. It further stated: "Each trust is irrevocable". It also stated that two affidavits were attached thereto "which may be taken as evidence".

It appears from one of the affidavits, which was executed by the mother and father, that they had ample assets to support themselves, that taxpayer was never called on to contribute to their support, and that their income alone was more than sufficient for their own needs. It appeared that their net taxable income for the year 1933 was $11,809.38, and they had additional income from tax-exempt securities; that their total net income from all sources in the year 1934 was $38,866.58; and that "their average outlay for necessary expenses for their combined support and comfort the past several years has not exceeded the sum of $6,500.00 per annum". The other affidavit was made by the taxpayer, and in it he stated that "he intended in the creation of these trusts to retain the corpus of the trusts; that it was not his intention to make a gift of the entire property, but it was his intention to make a gift of the income from the property, and the agreements were intended to be so worded and provided whereby only a gift of the income would be effected, with the further testamentary disposition of the principal upon his death".

The Board, by memorandum opinion, upheld respondent's view, other than an error in computation. Thereafter the taxpayer filed a motion with the Board to vacate its memorandum opinion and to either enter decision for him, or in the alternative, to take testimony as to the value of the interest, in the property transferred, which was retained by the taxpayer. The Board denied the motion, and entered a decision, redetermining the deficiency, in favor of respondent. The taxpayer petitioned us to review that decision.

Section 501(a) of the Revenue Act of 1932 imposes a tax "upon the transfer \* \* \* of property by gift". Section 501(b) provides that the "tax shall

apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect". Section 501(c) is the provision in question here. So far as is material here, it provides: "The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor * * *." 26 U.S.C.A. § 550 and note.

Article I, Treasury Regulations 79, promulgated under the act in question provides that the "statute imposes no tax upon property, but subjects to tax transfers of property by gift". Article 3, provides in part:

"The tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer * * * On the contrary, the tax is a primary and personal liability of the donor, is an exercise upon his act of making the transfer, is measured by the value of the property passing from the donor * * *

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself, the gift is complete. But a transfer * * * though passing both legal and beneficial title, is still in essence merely formal so long as there remains in the donor a power to cause the revesting of the beneficial title in himself, and the gift, from the standpoint of substance, remains incomplete during the existence of the power * * *"

As said in Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748, and as the regulations disclose, the statute "is aimed at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall".

Here it is obvious that the entire value of the property, less the specific deductions contained in the statute, must be included in the return, because the property was transferred, unless "the power to revest in the donor title to such property is vested in the donor". The quoted phrase means that if the donor by the terms of his transfer has retained the power to require the title to be returned to him, or such right is vested in him by law, then the transfer is not one which is taxable.

It is contended here that by the second trust agreement, which did not contain the provision that the trust was irrevocable, the taxpayer retained the power to require the trustee to return title to the property. This contention is based on Cal.Civ.Code § 2280, which provides that "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee". Thus under the law of California where the trust instruments were made, the second trust was revocable. At common law and in Massachusetts, which was the seat of the trust, the trust was not revocable unless the power of revocation was contained in the declaration of trust instrument, excepting of course the case where the beneficiaries consented. Sands v. Old Colony Trust Co., 195 Mass. 575, 81 N.E. 300, 12 Ann.Cas. 837. Therefore, the question is determined by deciding whether the law of California, or whether the law of Massachusetts should be applied.

Putting aside the rule that local law is not controlling unless the federal statute makes it so[1] because not relied on here, we think the Massachusetts law should be applied. 2 Beale, The Conflict of Laws, §§ 297.1, 297.2, pp. 1023–1025; Restate. of the Law, Conflict of Laws, §§ 297, 299, pp. 379, 381. Applying it, we hold that the second trust was irrevocable.

The taxpayer relies on his affidavit as showing a contrary intention, but in this respect, the trust instrument being unambiguous, controls. Helvering v. Coleman-Gilbert, 296 U.S. 369, 373, 374, 56 S.Ct. 285, 80 L.Ed. 278.

The taxpayer contends that, since § 506, 26 U.S.C.A. § 555, provides that if "the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift", only the value of the interest in the property transferred should be included in the return, and the value of the interest, in the property transferred, which he retained, should be excluded from the amount of the

---

[1] Heiner v. Mellon, 304 U.S. 271, 279, 58 S.Ct. 926, 82 L.Ed. 1337. Compare the statement in Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487 that there "is no federal general common law".

gift. Respondent contends that since there was a "spendthrift trust" provision in each instrument prohibiting alienation of the interest of any beneficiary, the taxpayer's interest could have no value because it could not be transferred. Respondent's contention is not sound, however, because such a "spendthrift trust" provision, in Massachusetts, California, and generally, is invalid as to the creditors of the trustor. 1 Bogert, Trusts and Trustees, p. 7, 730, § 224; 1 Restatement of the Law of Trusts, p. 386, § 156; 65 C.J. 239, 240, § 27. Therefore, his prospective right to the income upon the occurrence of certain events, was capable of alienation. That particular feature, however, is of little effect, because under the mortality tables, it appears that the taxpayer would outlive both his mother and father. If he did he would be entitled to the corpus of the trust freed from any restraint on alienation, and it is readily conceivable that such possibility had a value.

Such value should have been deducted from the value of the securities transferred, but there was no evidence of such value submitted to the Board.

Section 601 of the Revenue Act of 1928, 45 Stat. 871, empowers the Board to prescribe its "rules of practice and procedure". Rule 32 (Rev. to July 1, 1938) provides that the burden of proof shall be on the taxpayer, and Rule 31(f) provides that a failure of proof "will be ground for dismissal". Rule 19 provides in part: "Motions for rehearing, reconsideration, further hearing, and the like, to be considered timely, shall be made within 30 days after promulgation or entry of the report". The memorandum opinion was entered on June 10, 1938. The taxpayer's motion to adduce additional evidence was filed July 13, 1938, and was denied without indication of the reason therefor on July 20, 1938. The reason for the denial may have been because it was not timely filed, or it may have been because such evidence was "available to the petitioner in ample time to present it before the Board had made and filed its findings of fact and opinion". Bankers Coal Co. v. Burnet, 287 U.S. 308, 313, 55 S.Ct. 150, 77 L.Ed. 325. Whichever it was, we cannot say the Board abused its discretion.

In this connection, the taxpayer relies on Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, where it was held that remand to the Board was proper where the taxpayer had shown the Board's decision to be wrong, but had not submitted evidence to show the correct amount of tax due. That case is not in point here because the taxpayer has not shown that his interest in the trust had a value. While it is conceivable that it might have, it is also conceivable that it might not have. For example, the taxpayer's health might be in such condition that his expectancy under the mortality tables would not be applicable. In the absence of proof of the value, the rule in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, is not applicable, because it is not shown that the Board's decision was wrong.

Affirmed.