James Richard Bowden v. Commissioner.
Bowden v. Commissioner
Docket No. 52327.
United States Tax Court
T.C. Memo 1955-284; 1955 Tax Ct. Memo LEXIS 53; 14 T.C.M. (CCH) 1102; T.C.M. (RIA) 55284; October 25, 1955
James Richard Bowden, Esq., Grant Building, Atlanta, Ga., for the petitioner. L. P. Shield, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The Commissioner has determined a deficiency of $1,051.94 in petitioner's gift tax for the year 1950. Petitioner filed a gift tax return with the then collector of internal revenue for the district of Georgia but paid no tax on a certain transfer in trust, which the Commissioner determined accomplished a gift in the amount of $42,310.71, one-half of which, or $21,155.35, was taxable to him. [Findings of Fact] The facts have all been stipulated and we adopt the facts as stipulated as our findings of fact. A summary of some of these facts will suffice for this opinion. On July 29, 1950, petitioner transferred *54 funds and securities of the aggregate value of $100,392.48 to the Trust Company of Georgia to be held and administered in accordance with the provisions of the trust agreement. Under the terms of the trust agreement petitioner (then 52 years of age) was to receive $400 a month for life and upon his death the remainder, if any, was to be disbursed to certain named beneficiaries. The parties are in agreement that by means of the above transfer in trust the petitioner accomplished a taxable gift to the remaindermen. The difference of opinion exists as to the value of the gift so accomplished. Section 1000 of the 1939 Code imposes the tax "whether the transfer is in trust or otherwise" and section 1005 of the same Code provides, "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Section 86.19(f) of Regulations 108, as amended by T.D. 5902, C.B. 1952-1, provides, in part: "Where the donor transfers property [after December 31, 1951] in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest. *55 " The above paragraph (f) goes on to prescribe the way the present worth of the interest to be valued is to be computed, and it sets forth Tables I and II to be used in such computation. By paragraph (g) of said section 86.19, gifts made prior to January 1, 1952 are made subject to (f) except that Table A or B appearing at the end of section (g) is to be followed in computing the present worth of the interest to be valued, instead of Tables I and II. By following (f) and (g) and the factors set forth therein, the Commissioner determined the commuted value of petitioner's interest as $58,081.77 and the balance of the trust fund, or $42,310.71, the value of the gift. There is no dispute as to the figures if (f) and (g) are applicable. [Opinion] We do not understand that petitioner assails (f) and (g) as being improper regulations in the sense that they do not tend to carry out the provisions of the law, except in one particular, which will be mentioned later. Petitioner's argument here is that (f) and (g) are not applicable because the trust instrument allows encroachment on the corpus to pay his $400 a month annuity and also to pay trustee's commissions and other costs of *56 administering the trust. He argues the portion eventually going to the remaindermen might be reduced to zero. He turns to paragraph (j) of said section 86.19 which provides, "Any property not specifically treated in this section should be valued in accordance with the rule laid down under (a) hereof." The rule laid down under (a) is to the effect that in determining the value of a gift in property, "All relevant facts and elements of value as of the time of the gift should be considered." In line with his contention, petitioner deducted from the value of the property transferred to the trust, the amount it would have cost him, on the date of the transfer, to purchase from a life insurance company an annuity contract paying him $400 per month for the remainder of his life. His return stated that such a contract could be purchased from The Prudential Insurance Company of America for $93,680 (the stipulation included evidence to that effect) and he deducted that amount from the amount transferred to the trust, leaving $6,712.48, the value of the gift, one-half of which, or $3,356.24, was taxable to him. Petitioner and his wife, Margaret B. Bowden, signed consents under which they elected *57 to have the gifts made by either of them considered as having been made one-half by each. There is nothing peculiar about this trust. It is specifically covered by the very wording of paragraph (f), supra, in that the "donor transfers property in trust * * * and retains an interest therein." The value of the gift, according to said paragraph, is "the value of the property transferred less the value of the donor's retained interest." It is immaterial that the payment of the annuity will, or might, cause an invasion of the corpus. The value of the gift is determined as of the date of the transfer to the trustee. All that the regulation does as applied to petitioner is say that on that date his retention of a $400 a month annuity as the primary obligation of the trust was, according to actuarial computation, a $58,081.77 interest in the $100,392.48 he transferred to the trustee. He placed the balance, actuarially speaking, beyond his control, and that balance is the gift. Smith v. Shaughnessy, 318 U.S. 176. This trust is not divided into corpus and the income therefrom, in the sense that the corpus is to be preserved for the remaindermen. The annuity is made the prime *58 obligation of the corpus and income. The factors set forth in the applicable regulations recognize that the annuity is to be paid from the trust property including income. The trust has a certain similarity to an annuity contract except that the companies selling such contracts personally guarantee the payment of the annuity, while here the trustee assumes no personal liability. If the annuity is so high it cannot all be paid from income throughout the annuitant's expectancy, the following estate is of less value. The factor set forth in (g), supra, which is to be used in computing the value of a monthly annuity is 1.01820. The factor set forth in Table A for petitioner's age, 52 years, is 11.88408. The Commissioner's detailed computation of the retained value of the $400 a month annuity is: $400.00 x 12 (months) x 11.88408 x 1.01820 = $58,081.77. Obviously the amount of the annuity will determine the value of the following estate. The case here is much like Daisy B. Plummer, 2 T.C. 263, where the donor retained the income plus the right to withdraw $15,000 each year from the trust. We held the remainder, after actuarial computation of the retained interest, subject *59 to the tax. Petitioner's entire argument that the corpus will or might be consumed by the annuity payments and expenses of the trust assumes that the gross return on the trust will not exceed 4 per cent and that he will live for 21 years. The interest rate of the table was 4 per cent but the trustee was not limited to low income investments sanctioned by statute. While the mortality table used gives his life expectancy as 21 years, he cannot assume he will live that long and secure a discount in advance for the monthly payments and costs and expenses of the trust for 21 years. The argument could be applied in reverse. If he passed away shortly after the transfer in trust the named beneficiaries would have received much more than the value of the gift computed under the regulation. A situation much like that occurred as to estate taxes in Ithaca Trust Co. v. United States, 279 U.S. 151. There decedent gave his wife a life estate and remainder to charities. When the wife died six months after decedent and before the estate tax return was filed, it was contended it was no longer necessary to estimate the wife's estate by the mortality rates in the regulation. The Court *60 held the value of the charitable bequests, for tax purposes, would be diminished by the postponement of the wife's life estate as shown by the mortality tables, not by the event as it turned out to be, the opinion stating: "the value of the thing to be taxed must be estimated as of the time when the act is done." The tax is not, and obviously could not be, computed on the amount the beneficiaries ultimately receive. Commissioner v. Marshall (C.C.A. 2d, 1942) 125 Fed. (2d) 943. The only reasonable way to value such a gift of a future interest is by the application of the interest rates and mortality tables on the day the transfer is made. On the whole record, we hold the trust in this case falls within the provisions of paragraphs (f) and (g) of section 86.19 and the Commissioner correctly determined the gift tax by recourse to those regulations. There was no authority for petitioner to resort to paragraph (a) as this trust was specifically covered by (f) and (g), supra. The cost price of an annuity contract was not evidence of the value of petitioner's retained interest for the very good reason that the company contract was a personam obligation. Incidentally, it *61 is to be noted that the value of such a company annuity contract is, for gift tax purposes, established by its sale price. See paragraph (i) of section 86.19. Finally, petitioner argues the interest rate of 4 per cent used in Table A is too high and the mortality rate used in the same table is too low. Petitioner states this table was "outmoded and untrue." No evidence was introduced on this point and petitioner's argument is largely based on the fact that the Treasury Department and the Commissioner dropped the interest rate to 3 1/2 per cent for gifts after December 31, 1951. Presumably the mortality rate for gifts after that date was also lengthened. Petitioner does not demonstrate how he is harmed. There would be some offset when the interest rate used would be too high and the life expectancy too short. See Henry F. DuPont, (1943) 2 T.C. 246. Slight errors in mortality tables and interest rates do not make their use improper. Daisy B. Plummer, supra.
Decision will be entered for the respondent.