**Ray DODGE and Eugene E. Feltz, Trustees under the Will of Ezra Royce, Plaintiffs,**

v.

**UNITED STATES of America, Defendant,**

v.

**ESTATE of Ezra ROYCE, c/o Ray Dodge and Eugene E. Feltz, Trustees, Ezra Royce, Deceased, c/o Ray Dodge and Eugene E. Feltz and Dora F. Royce, Counterclaim Defendants.**

Civ. No. 75–977.

United States District Court,
D. Oregon.

Sept. 20, 1977.

**536**

Eugene E. Feltz, Casey, Palmer, Feltz & Sherry, Portland, Or., for plaintiffs and counterclaim defendants.

Sidney I. Lezak, U. S. Atty., Portland, Or., Robert G. Burt, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

BELLONI, District Judge:

Ray Dodge and Eugene Feltz (plaintiffs) are trustees under the will of Ezra Royce. They seek refund of federal estate taxes already paid the defendant (Commissioner). The Commissioner has counterclaimed

against the estate (estate) for income taxes and against the decedent and his wife, Dora Royce (Royces), for gift taxes. Jurisdiction is based on 28 U.S.C. § 1346(a)(1).

### .I

### FACTUAL BACKGROUND [1]

Quite unusual facts accompany this case. Ezra and Bonnie Royce were brothers. Beginning in 1908, they embarked on a series of Oregon and Washington business ventures as varied as can be imagined: Taxicabs, apple orchard, dance hall, Gray Line tours, an amusement company, etc. They operated on a partnership basis, and with one exception, took equal shares in the businesses. They usually were very successful.

In 1935, Bonnie, 47 years old and suffering from arthritis, bought a farm near Portland, and began raising pure bred Guernsey cattle. He also decreased his time spent on the brothers' joint businesses. The profits continued to be distributed equally between the brothers.

Bonnie and his wife, Isabel, had no children. Ezra had one child, Eunice Royce Dodge.

One day during 1938 when Eunice was about nine years old, Bonnie said to Ezra:

I want to talk to you about a Will. I had John Veach make a Will for me. I have put Eunice in there for half of my estate and I want an understanding with you. . . . I am doing that in return for that. I want you to take care of my interests here as long as I have them, see?

In other words, Bonnie offered to give one-half of his estate to Ezra's daughter, Eunice, in return for Ezra running the joint businesses. Ezra asked Bonnie to put the agreement in writing, but Bonnie refused. Bonnie also insisted that Ezra act as executor for Bonnie's estate without compensation.

After 1938, Ezra continued to devote his full time to the brothers' business affairs

1. This case was tried on a set of stipulated exhibits. Most all of the facts involved come from California state court memorandum opinion and opinion on appeal. *Dodge v. Royce*, Civil No. 73901 (Cal.Super.Ct., Feb. 13, 1968), *aff'd in relevant part*, Civil No. 33713 (Cal.Ct. App., Dec. 13, 1968).

without charge or additional pay. Bonnie devoted little time to the businesses, but continued to receive profits.

In 1952, after Bonnie had moved to California and remarried,[2] an estrangement developed between the two brothers and their wives. At Bonnie's request, they began to liquidate their business interests. This liquidation continued until 1959 when only one joint interest existed.

In 1952, Bonnie had another will drawn which left a large portion of his estate to Eunice. However, in 1963 and 1964, he executed a new will and codicil. No provision was made for Eunice in either the will or the codicil.

Bonnie died in 1964, and the 1963 will and 1964 codicil were admitted to California probate on July 27, 1964.

In 1965, Eunice filed an action against Bonnie's estate's beneficiaries to impress a constructive trust on one-half of the net assets of the estate based on the 1938 oral contract. Also in 1965, Ezra filed an action in quantum meruit against Bonnie's estate.[3]

Eunice's action resulted in a 1968 judgment in her favor.[4] The trial court found that Bonnie had orally agreed to leave one-half of his property to Eunice in consideration of Ezra's promise to care for Bonnie's business interest, that Ezra had fully performed the agreement, and that it was enforceable. The beneficiaries were directed to pay one-half of the estate's net assets to Eunice.

The beneficiaries appealed, and the California Court of Appeals affirmed. *Dodge v. Royce, supra.*

Ezra's quantum meruit case was dismissed.

Ezra died in Portland in 1967. His estate's estate tax return did not include any amount representing the value of the interest under the 1938 contract. The Commissioner audited the estate, and determined that Ezra's claim against Bonnie's estate should have been included in Ezra's estate in the amount of $427,472.91. Plaintiffs paid the additional estate tax, and filed a refund claim.

After the Commissioner denied the refund, plaintiffs filed this action. The Commissioner counterclaimed against the estate for income taxes on the net proceeds received by Eunice during 1970 from Bonnie's estate, and against the Royces for gift taxes arising out of the alleged assignment of the 1938 oral contract.

The counterclaims are the only matters presently before me.

## II

### INCOME TAX

■ *A. Income in Respect of a Decedent.* The Commissioner first relies on Internal Revenue Code § 691 to bring Eunice's judgment recovery into Ezra's estate's taxable income. That section provides, in general, that income in respect of a decedent shall be included in gross income of the estate in the taxable year when received "... if the right to receive the amount is *acquired by the decedent's estate from the decedent* ...." (Emphasis added).

The Commissioner's reliance is obviously misplaced for Ezra's estate did not acquire any right to receive any of the judgment money from Ezra.

■ *B. Anticipatory Assignment of Income.* The other prong of the Commissioner's income tax attack is based on the "anticipatory assignment of income" doctrine of *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930): "... fruits are [not to be] attributed to a different tree from that on which they grow." 281 U.S. at 115, 50 S.Ct. at 241. More plainly: He who earns income may not avoid taxation through anticipatory arrangements. Here, the Commissioner argues that the 1938 en-

---

2. Bonnie's first wife, Isabel, died after the move to California.

3. Ezra sought $500,000.00 from the estate.

4. Eunice recovered $658,082.78. The estate of Bonnie was valued at $1,046,705.81 for estate tax purposes.

forceable contract was an arrangement whereby Ezra assigned to his daughter, Eunice, his rights to income under the contract.

The estate responds with two arguments: a) *Lucas v. Earl* does not apply because Ezra's right to any money from Bonnie was too remote, doubtful and contingent; and b) *Lucas v. Earl* does not apply because Ezra neither received nor had the right to receive or possess any income as a result of the 1938 agreement.

1. *The Doubtful Nature of Eunice's (Ezra's) Claim.* Assuming, without deciding, that Ezra did possess a *right* to income as a result of the 1938 agreement, the question then arises: Of what consequence is that? Does it then necessarily *follow* that *Lucas v. Earl* applies and Ezra's estate realized income when the California state court judgment was paid to Eunice?

No. The doctrine of anticipatory assignment of income will not be applied where a right to that income or a claim for that income is ". . . doubtful, uncertain, and contingent in view of the facts. . . ." *Jones v. Commissioner*, 306 F.2d 292, 301 (5th Cir. 1962); *Cold Metal Process Co. v. Commissioner*, 247 F.2d 864 (6th Cir. 1957); *see Putoma Corp. v. Commissioner*, 66 T.C. 60 (1976). Both *Jones* and *Cold Metal Process* involved claims or rights to income which the Fifth and Sixth Circuits found to be uncertain and contingent—thereby defeating the Commissioner's *Lucas v. Earl* arguments. Both cases involved income which was doubtful because the realization was *dependent upon the outcomes of lawsuits.*

So it is here. Any right which Ezra had to one-half of Bonnie's estate as a result of the 1938 agreement was, at best, extremely uncertain and doubtful. Eventually, it had to be litigated. The uncertainties are thoughtfully analyzed in the following quote from plaintiffs' brief, which I adopt as findings:

Eunice, the recipient designated by Bonnie, was only nine years old. Her premature death due to illness or accident would have thrown the agreement into confusion. Bonnie, in his early fifties, could have given away virtually his entire estate in order to frustrate or minimize the agreement. Even if Bonnie intended to in good faith keep the agreement, creditors, separate business losses and other adverse financial activities could have whitled his estate to nothing. Certainly Ezra's early death would have immediately ended the agreement without benefit to Eunice. In addition to these uncertainties, from the very minute the agreement was made, *it was overshadowed with the spector of lengthy and costly litigation. Immediately after Bonnie set forth the precise details of his plan to Ezra. Ezra could see possible legal problems.* He asked for the *agreement* to be reduced to writing. When Bonnie refused *the stage was set for six years of litigation and appeals*, which in fact began in July of 1964 when Bonnie died. There can be only one conclusion from these facts: Any right that Ezra might have had to assign as a result of the 1938 oral agreement was fraught with problems and totally clouded with doubts of collectibility.

(Emphasis added).

Both California courts (trial and appellate) grappled with these same facts. The decisions reached were not easy ones to make for either court. To say that Ezra's right to any income as a result of the 1938 oral agreement was not doubtful would be to ignore reality. I conclude that the doctrine of anticipatory assignment of income does not apply here because of the doubtful nature of Ezra's rights under the 1938 contract.

2. *Ezra's Right to Receive Income.* Because of my ruling on the doubtful nature of Ezra's claim, I need not reach this issue.

III

GIFT TAX

The Commissioner contends that Eunice's receipt of one-half of Bonnie's estate in 1970 constituted a 1964 gift based on

the 1938 oral contract between Ezra and Bonnie. The reasoning employed is that Ezra gave away his right to the money to Eunice in 1938, but that the gift occurred in 1964 (when Bonnie died) because that was the date when the gift first became susceptible of valuation.

The Royces contend that no taxable gift occurred because Ezra had no power to transfer property. They alternatively contend that, if a taxable gift is found, the gift took place either in 1938 (the year of the contract) or 1970 (the year in which Eunice collected the state court judgment).

I find that a taxable gift did occur. *Whatever right Ezra did have to any money from the 1938 contract he gave to Eunice in 1938.*[5] As stated by the Supreme Court, the ". . . language of the gift tax statute, 'property . . . real or personal, tangible or intangible,' is broad enough to include property, however conceptual or contingent." *Smith v. Shaughnessy*, 318 U.S. 176, 180, 63 S.Ct. 545, 547, 87 L.Ed. 690 (1943).

I have fully analyzed the uncertainties and doubts which attached to any rights arising from the 1938 contract. The transfer, however, did take place in 1938. What value it had I believe can be ascertained as of that time through methods suggested by the Royces in their brief. Accordingly, I conclude that a taxable gift occurred in 1938, taxable at that time.

Just cause existed for not filing a gift tax return. No penalty is warranted.

Plaintiffs' counsel is directed to submit a form of order in accordance with the rulings made in this opinion.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

5. I assume, without deciding, that this finding will bear on the estate tax issues remaining.