CLINTON E. WARNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CLINTON E. WARNER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentWarner v. CommissionerDocket Nos. 5979-80, 2171-82.United States Tax CourtT.C. Memo 1984-582; 1984 Tax Ct. Memo LEXIS 90; 49 T.C.M. (CCH) 5; T.C.M. (RIA) 84582; November 1, 1984. Robert H. Hishon and M. Celeste Pickron, for the petitioner. Roslyn Grand Taylor, for the respondent. FAY MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal gift and income taxes as follows: Gift TaxPeriod EndingDeficiency12-31-67$12,024.3112-31-686,194.0812-31-691,698.7512-31-7011,700.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,544.829-30-714,050.0012-31-711,125.006-30-722,990.8012-31-723,600.003-31-732,400.006-30-732,400.00Income TaxYearDeficiency1975$3,673.5319762,094.08*91 After concessions, the issues are (1) whether petitioner is liable for gift taxes under section 25011 on certain transfers of property and (2) whether petitioner is liable for income tax on the income of a certain trust. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. 2*92 Petitioner, Clinton E. Warner, resided in Atlanta, Ga., when the petitions were filed herein. In May 1967 petitioner and his wife were separated pending a divorce. At that time petitioner consulted with Joel Stokes (herein "Stokes") who was then a vice-president and trust officer of Citizens Trust Bank (herein "the Bank") and explained that he wanted to insulate his assets from his wife's claims due to their anticipated divorce while retaining complete control over those assets. Stokes proposed to petitioner that his objective could be met by transferring assets to a trust naming the Bank as trustee. Under Stokes' plan petitioner would first transfer assets to his father, Clinton E. Warner, Sr., who would then, as the nominal grantor, execute a written trust agreement and transfer the assets to the Bank, as trustee. Petitioner assented to this proposal but orally agreed with Stokes that, notwithstanding the terms of the written trust agreement, petitioner would retain absolute control over the transferred assets, could at any time regain possession of any portion of those assets, and could direct the investment of those assets. Consistent with this plan, *93 petitioner transferred to his father assets valued at $50,000, and on May 10, 1967, petitioner's father, as grantor, executed a written trust agreement and transferred those assets to the trust. The trust agreement provides in part as follows: that the grantor has no right to alter, amend, revoke or terminate the trust or any provision thereof; that the grantor may add property to the trust either during his lifetime or after his death by will; that the trustee is authorized to pay to petitioner and to petitioner's son, Clinton Ellsworth Warner, III, (herein "Clinton") such portions of income and principal as the trustee in its sole discretion deems necessary for their welfare and support and for the education of Clinton; that the trustee is to hold the property after the deaths of both of the named beneficiaries for the benefit of the descendants of Clinton and to distribute such property to those descendants at the time described in the agreement; and that the trustee is to act in accordance with the grantor's direction concerning the investment of the trust property, subject to certain exceptions not relevant herein. Petitioner at various times transferred other assets directly*94 to the trust. On May 10, 1967, the same day that petitioner's father executed the written trust agreement, petitioner transferred to the trust shares of stock valued at $15,324.26 and a certificate of deposit valued at $12,805.79. During the calendar years 3 ending December 31, 1968, December 31, 1969, and December 31, 1970, petitioner transferred to the trust cash and other assets having aggregate values of $28,640.58, $7,550.00, and $52,000, respectively. During the calendar quarters ending March 31, 1971, September 30, 1971, December 31, 1971, 4 June 30, 1972, December 31, 1972, March 31, 1973, and June 30, 1973, petitioner transferred to the trust cash and other assets having aggregate values of $46,865.88, $18,000, $5,000, $13,000, $15,000, $10,000 and $10,000, respectively (hereinafter all assets transferred by either petitioner or his father are collectively referred to as the "trust assets"). *95 At all times the bank followed petitioner's direction in dealing with the trust assets. In July 1971 pursuant to petitioner's request, the Bank used the trust assets to purchase a house which petitioner has continuously used without charge as his principal residence.The trust assets have also been used to pay all expenses with respect to the house including mortgage installments, insurance, and property taxes, and to pay for furnishings and various improvements. Other transactions in which petitioner initiated and directed the Bank's disbursement, investment, or other handling of the trust assets include the purchase of stock in the Hilton Head (South Carolina) National Bank, the sale of an apartment building, the purchase of stock in various corporations, and the lending of a portion of the trust assets to a colleague of petitioner. Petitioner also negotiated a transaction in which a portion of the trust assets would have been used to purchase a shopping center. 5 On several occasions petitioner personally borrowed funds from the Bank, using the trust assets as collateral. In addition, under the terms of his oral agreement with Stokes, petitioner could cause a distribution*96 of trust assets to be made at any time and for any purpose. While Stokes held the position of trust officer, the Bank never refused to invest or distribute the trust assets in accordance with petitioner's direction. At the time of petitioner's consultation and subsequent agreement with Stokes, the Bank routinely based business transactions solely upon oral agreements and often failed to require the execution of documents setting forth the terms oif those transactions. Even when such documents were executed it was not unusual for their terms to contradict the oral agreements previously entered into, and for the Bank to act in accordance with the oral agreements. Such practice on the Bank's part was not consistent with standards in the banking industry. Petitioner and his wife were divorced in November 1973. Petitioner did not file gift tax returns for any of the periods in issue, nor did he include any of the trust's income on his Federal income tax returns. In his notices of deficiency, respondent determined that petitioner is liable for gift*97 taxes on each transfer of assets to the trust by him or by his father and that petitioner is taxable on the trust's net income. OPINION The first issue is whether any of the transfers to the trust constituted completed gifts giving rise to gift tax liability under section 2501. Section 2501 imposes a tax on all transfers of property by gift. Under section 2511, subject to certain limitations, the gift tax imposed by section 2501 applies to all completed gifts whether the transfer is in trust or otherwise and whether the gift is direct or indirect. However, the gift tax is not imposed to the extent that a gift is not complete.Sec. 25.2511-2, Gift Tax Regs. A gift is considered complete as to any property or part thereof where the donor has "so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." Sec. 25.2511-2(b), Gift Tax Regs. If, however, the donor reserves any power over the disposition of the property, the gift may be wholly or partially incomplete, depending upon the facts of*98 the particular case. Sec. 25.2511-2(b), Gift Tax Regs. Thus, whether petitioner's transfers constituted completed gifts requires a determination of whether petitioner abandoned dominion and control over the property transferred sufficient to put it beyond his recall. Burnet v. Guggenheim,288 U.S. 280 (1933); Smith v. Shaughnessy,318 U.S. 176 (1943). Respondent contends that each of petitioner's transfers to the trust constituted completed gifts because they were governed by the written trust agreement. 6 Petitioner maintains, however, that the transfers were not completed gifts but were merely revocable transfers made pursuant to his oral agreement with Stokes. For the following reasons, we agree with petitioner. *99 First, petitioner's testimony shows that his purpose in transferring the assets to the trust was solely to prevent his spouse from gaining possession of those assets. It is undisputed that all the transfers herein were made at a time when petitioner and his wife were experiencing marital difficulties. All transfers occurred while the divorce was pending; none were made after the divorce was granted. Petitioner at no time intended to relinquish dominion and control over the trust assets as the written agreement would have required. Furthermore, Stokes' testimony concerning the Bank's admittedly unorthodox practice of acting in accordance with oral agreements with customers in many of its transactions and his own participation in that practice was credible. He stated that it was never the Bank's intention to control the trust assets and he repeatedly characterized the trust assets as "his [petitioner's] money." Thus, it is clear that the parties to the written trust agreement never in fact intended that document to be controlling. Finally, the facts of this case show that all dealings with the trust assets by the Bank and petitioner were consistent with the oral*100 agreement between petitioner and Stokes rather than the written trust agreement. The Bank followed petitioner's direction concerning investment and disbursement of the trust assets in every instance until the mid-1970's when Stokes no longer held a position of influence within the Bank. At petitioner's instruction the Bank used a portion of the trust assets to purchase, maintain and furnish petitioner's personal residence. The Bank sought petitioner's authorization for stock purchases and acted in accordance with petitioner's direction concerning various other disbursements and investments of the trust assets including the lending of a portion of those assets and the sale of an apartment building. Petitioner and the Bank at all relevant times treated the trust assets as property over which petitioner had control. Petitioner entered negotiations for a transaction in which a portion of the trust assets would have been used to purchase a shopping center and also on several occasions borrowed from the Bank using the trust assets as collateral. Although the written trust agreement provided the grantor with the power to direct the investment of the trust assets, the extent*101 of petitioner's control over those assets greatly exceeded that power. Petitioner's control over the trust assets was, however, consistent with the terms of the oral agreement. Based on the foregoing, we find that petitioner's transfers of assets to the Bank were governed by his oral agreement with Stokes, and not the written trust agreement executed by petitioner's father. 7 Petitioner did not relinquish dominion and control over those assets and, therefore, the transfers did not constitute completed gifts for gift tax purposes. See Estate of Holtz v. Commissioner,38 T.C. 37, 44 (1962); Vander Weele v. Commissioner,27 T.C. 340, 345-346 (1956), affd. 254 F.2d 895 (6th Cir. 1958). Thus, petitioner is not liable for gift tax under section 2501. *102 The second issue is whether petitioner is liable for income tax on the net income of the trust. Since petitioner has conceded that he is liable for the income tax on the trust income if we find, as we have, that the transfers did not constitute completed gifts, we sustain respondent's determination on this issue. To reflect concessions and the foregoing, Decisions will be entered under Rule 155.Footnotes1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩2. Petitioner, by letter to the Court after completion of the scheduled briefing in this matter, contends that certain documents relied upon by respondent are not in the record. Those documents were marked as joint exhibits (see Rule 91(b)) and appended to the trial stipulation of facts. The record shows, however, that although in the stipulation petitioner expressly reserved the right to object to the admissibility of exhibits attached thereto, he failed to raise any such objection at trial. Any exhibit annexed to or filed with the stipulation is considered to be a part of the stipulation. Rule 91(a)(1). A stipulation when filed need not be offered formally in order to be considered in evidence. Rule 91(c). Thus, the record in this case includes all of the exhibits attached to the stipulation.↩3. For the years at issue before January 1, 1971, the gift tax under sec. 2501↩ was computed on the basis of calendar years rather than quarters. 4. Petitioner argues in his reply brief that the tax deficiency for the quarters ending September 30, 1971, and December 31, 1971, are no longer in dispute because they were not included in the parties' stipulation of facts. Our findings, however, are not limited to those facts stipulated to by the parties. Since petitioner failed to rebut the presumption that the notice of deficiency is correct (see Welch v. Helvering,290 U.S. 111, 115↩ (1933)) our decision is based upon the facts set forth in the notice of deficiency.5. The parties to the proposed transaction failed to reach an agreement, however, and the sale was not consummated.↩6. At trial, respondent objected to petitioner's and Stokes' testimony regarding the terms of petitioner's asserted oral agreement with the Bank on the grounds that such testimony violated the parol evidence rule. The Court overruled respondent's objection but granted leave to argue the issue on brief. After a thorough study of the applicable case law we find that parol evidence is admissible herein under the holding that the parol evidence rule cannot be invoked by one who is not a party to the written instrument involved or, alternatively, under Georgia state law, which allows the Court to examine the nature and circumstance of a particular transaction and the conduct and declaration of the parties to imply or rebut the existence of a trust, notwithstanding the existence of a contradictory written document (see Estate of Craft v. Commissioner,68 T.C. 249, 259-263 (1977), affd. 608 F.2d 240 (5th Cir. 1979). See further Conner v. Conner,250 Ga. 27, 295 S.E.2d 739 (1982); Hodges v. Hodges,221 Ga. 587, 146 S.E.2d 313↩ (1965)). Accordingly, we adhere to our ruling on this matter.7. Due to our holding herein, we need not address petitioner's alternative argument that the transfers were not completed gifts for Federal tax purposes even if the written trust agreement is deemed controlling because (1) under the written trust agreement petitioner has an enforceable right to potentially all of the corpus; and (2) under state law petitioner's interest under the written trust agreement is subject to his creditors' claims.↩