Clyde A. BLANCHARD, Executor of the Estate of Florence L. Blanchard, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 3–642–W.

United States District Court
S. D. Iowa, W. D.

Nov. 1, 1968.

Edward G. Garvey and James R. McGreevy, Omaha, Neb., for plaintiff.

Daniel L. Power, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM AND ORDER.

HANSON, District Judge.

This is a civil tax refund suit for the recovery of $33,081.75 paid by Florence L. Blanchard pursuant to a deficiency assessment made against her for gift tax in calendar year 1959, plus assessed interest in the amount of $6,621.79, plus statutory interest. Clyde A. Blanchard was substituted as plaintiff in his capacity as Executor of the Estate upon the death of the taxpayer, Florence L. Blanchard. Jurisdiction arises under the provisions of Title 28 U.S.C. Section 1346(a) (1).

The taxpayer timely filed with the District Director of Internal Revenue at Des Moines, Iowa, her gift tax return for the calendar year 1959 reporting: (1) the gifting of 458 shares of common capital stock of the State Savings Bank of Council Bluffs, Iowa, into six irrevocable trusts of equal shares for the ultimate benefit of her six grandchildren; (2) the valuation of the gift at $315.00 per share; and (3) total gift tax payable on the transfer of stock in the amount of $17,524.04. On April 25, 1963, the Commissioner of Internal Revenue notified the taxpayer of a deficiency in the amount of $33,081.75 for 1959 gift taxes. The additional assessment resulted from the Commissioner's valuation of the gifted stock at $707.45 per share. The taxpayer paid the deficiency together with interest of $6,621.-79 and shortly thereafter filed a claim for refund. Suit was brought in this Court more than six months after filing of the claim for refund. The Government seeks to uphold the Commissioner's valuation and, as an alternate defense, argues that in the event the plaintiff should be allowed to recover to any extent, the defendant is entitled to an offsetting adjustment in the nature of an equitable recoupment since Mrs. Blanchard did not report as income the amount of $17,524.04 paid by the co-trustees of the trusts for the gift tax due on the transfers by her.

On the date of the transfers in trust, December 10, 1959, there were 2,000 shares of capital stock outstanding in the State Savings Bank of Council Bluffs. Prior to the transfers, 458 shares were owned by the taxpayer individually, 343 shares were held by the taxpayer as trustee under the will of her husband, Arnold C. Blanchard, for their son and daughter, Clyde A. Blanchard and Helen A. Nugent, 247 shares were owned by Clyde A. Blanchard and his wife, and 952 shares were owned by forty-five other shareholders. The 1048 shares owned by members of the Blanchard family represented 52.4% of the outstanding stock. The taxpayer transferred to Clyde A. Blanchard and The Omaha National Bank as co-trustees her individually owned stock to be held in six trusts with each trust receiving 76⅓ shares. On December 31, 1959, Life Investors of Iowa, Inc. bought the 1048 shares of stock owned by or held in trust for members of the Blanchard family. The price per share paid for the stock transferred in trust on December 10, 1959, was $707.45, which is the value the Commissioner placed on the shares in making his deficiency assessment. Early in 1960, Life Investors of Iowa, Inc. acquired additional shares of the bank stock from other stockholders at a price of $315.00 per share which is the value of the shares reported on the gift tax returns.

The primary issue before the Court is the valuation of the bank stock for gift tax purposes. Under Section 2512 of the Internal Revenue Code of 1954, the value of property at the date of the gift is considered the amount of the gift. Where the gift is of corporate stock, fair market value must be determined by taking into consideration numerous factors. The point of disagreement between the taxpayer and the Commissioner in this case is whether or not the gifted stock should be valued as if control of the bank inhered in it. The taxpayer contends that each gift of 76⅓ shares must be considered without regard to the fact of majority ownership within the Blanchard family and without regard to sale of the same shares at

$707.45 per share. The government argues that the best evidence of fair market value of the gifted stock is the price paid for the stock three weeks after the gifts were made.

The Court is presented with a narrowly drawn issue of law, the solution of which requires a choice between seemingly conflicting valuation principles. On the one hand, the government presents the well-founded argument that arm's-length sales of stock are the best evidence of value. As applied to this case, this principle would accord controlling weight to the fact that the gifted stock was sold at a price of $707.45 per share within three weeks after the transfers in trust. The government also contends that the sales of other stock held by the Blanchards and sold by them on the same date as the sale of the gifted stock are comparable in all respects and represent the next best evidence of the value of the gifted stock. The taxpayer does not deny that the valuation principle urged by the government is well established, but questions its applicability to this case. The principle contended for by the taxpayer is that for purpose of the gift tax the fair market value of each gift should be separately found. Under this rule, it would be proper to consider each gift of 76⅓ shares as nothing more than a transfer of a minority interest of 3.817% of the outstanding stock.

The taxpayer cites Whittemore v. Fitzpatrick, 127 F.Supp. 710 (D.Conn. 1954), as authority for its position. In that case, the plaintiff, who owned all of the 820 shares of stock in a family corporation, transferred 600 shares in trust for the equal benefit of three sons severally. The government contended that the gift tax should be measured by the value of the entire gifted block of 600 shares while the taxpayer argued that three separate gifts had been made and each should be separately valued. The court analyzed the applicable statutes and concluded as follows:

"As its language plainly imports, each gift made in property is to be valued separately. Not here or elsewhere does the statute provide or even suggest that, *for purposes of valuation*, gifts made to separate persons must be aggregated for purposes of valuation.

I conclude, therefore, that the plaintiff's position on this novel point is inherently sound * * *."

Proceeding from this conclusion, the Court in *Whittemore* discounted the value of the underlying assets by an additional sixteen per cent (approx.) to allow for the minority interest factor. The plaintiff cites a number of other cases in support of the proposition that separate gifts of shares of capital stock in the same corporation simultaneously made to separate donees are for the purposes of the gift tax law valued separately and not aggregated for valuation. See Phillips v. Tomlison, 62–2 U.S.T.C., Par. 12,093 (S.D.Fla.1962); Maytag v. Commissioner of Int. Rev., 187 F.2d 962 (10 Cir. 1951); Sewell L. Avery v. Commissioner of Int. Rev., 3 T.C. 963 (1944); Phipps v. Commissioner of Int. Rev., 127 F.2d 214 (10 Cir. 1942), affirming 43 B.T.A. 1010 (1941). In these cases the question of aggregation arose when it was contended that gifts of a large number of shares simultaneously would decrease the value of each share so that each group of shares would be less valuable than if it were the only gift made. Most courts have held that in such cases each gift must be valued separately. There is no question in this case concerning the effect on market price of the disposition of a large number of shares. The cases cited by the plaintiff involving this question are factually distinguishable from the instant case, but it serves the plaintiff's purpose to generalize from them and conclude that each gift of Blanchard stock must be valued separately. The *Whittemore* case is factually more in point but its reasoning is not a sufficient answer to the Government's contentions. The Government arrives at a per share value of $707.45 not by considering the 458 gifted shares as one block

but by looking to such facts as majority ownership within the Blanchard family and the sale of such controlling interest. Apparently, the plaintiff relies on the principle of non-aggregation in order to reach the better-established principle that the per share value of minority interests in closely-held corporations, or any corporation for that matter, is usually less than the per share value of a controlling interest. Here it is interesting to note that in some of the plaintiff's cited cases, the Courts concluded that the per share value of a small gift was higher when each gift was considered separately. More to the point, the Government has no real quarrel with the validity of this valuation principle. Rather, the Government contends that overriding considerations should prevent its application to the facts of this case. The plaintiff appears to be arguing that the total value of six gifts of 76⅓ shares was less than the value of a gift of 458 shares but the Government is arguing that the true value of each of the 458 shares, whether transferred in six parts or one, was $707.45.

The Government bases its contentions on two grounds. The first is that the value of the gifted shares was fixed on the date of the transfers at a price of no less than $707.45 by the terms of a pending sale of the stock to Life Investors. There is no dispute about the fact that the sale of the stock was finally completed three weeks after the transfers in trust. There is evidence, however, from which it can be inferred that at the time the gifts were made the members of the Blanchard family knew that an acceptable offer to sell could be made to Life Investors and that an intention to sell had been formed. The evidence shows that negotiations for the sale of the bank stock were started between Life Investors and Clyde Blanchard early in 1959. Clyde Blanchard represented the Blanchard family throughout the negotiations and approximately in September or October, the donor, Clyde Blanchard, and Helen Blanchard Nugent agreed to sell control of the bank if satisfactory terms could be worked out. In October or November, Clyde Blanchard and the Executive Vice-President of Life Investors, Ronald Jensen, came to a general understanding as to the value of the Blanchard stock, the value being $775,000. The donor agreed with Clyde Blanchard as to the proposed price. Mr. Jensen did not have the authority to approve the purchase of the stock but he was eager to secure approval of the purchase by the Directors of Life Investors if the terms were favorable. In the latter stages of negotiations the "stumbling block" preventing agreement was the terms of the lease on the bank premises. These terms could be controlled by the Blanchards. When the purchase was approved on December 30, the purchaser went to considerable lengths to conclude the transaction before the end of the year. It is probable that Clyde Blanchard knew sometime before the actual sale that Life Investors wanted a 1959 transaction. With only three weeks remaining in the year, the donor made the six gifts which she testified were made for tax purposes. She had considered setting up the trust for three or four years before December 10, 1959. From these facts, one could conclude that both the donor and the trustee of the six trusts, Clyde Blanchard, expected to sell the bank stock and knew that the gifted stock was worth over $700 per share on December 10, 1959. They could not be absolutely certain of a sale. In fact, the evidence shows that near Christmas in 1959 the parties to the sale had a serious disagreement as to the terms, and in the opinion of Clyde Blanchard, the prospects of a sale had ended. But on December 10, 1959, there was certainly a strong probability of a sale.

The Government can also concede, for purposes of argument, that the prospects of a sale to Life Investors is too speculative a basis on which to value the stock and base its contention on another ground. Application of the rule that minority interests are worth less per share would be quite strained in this case because it would ignore the realities

352

of the situation. The transfers of the 458 shares cannot reasonably be divorced for valuation purposes from the fact of control of the bank within the Blanchard family. Both before and after the transfers in trust the controlling interest was owned by the family. Clyde Blanchard was apparently the most influential of the members of the family and his ability to control the family holdings of bank stock was actually increased when he was made trustee of the six trusts. He testified that he would not sell less than controlling interest in the bank because a controlling interest was worth considerably more per share than any segment of the Blanchard holdings on a per share basis. The value of all of the Blanchard stock was dependent on the ability to combine the individual holdings of the family to make up a controlling interest. The 1048 shares owned by the family represented 52.4% of the outstanding stock and the 458 shares constituted 44% of the family stock. It is a necessary inference from these facts that so long as the gifted stock was controlled by the family, it had to be valued as part of a majority interest in the bank. The unreasonableness of valuing the stock at $315 per share is evidenced by its sale at more than twice that price less than three weeks after the gifts were made. Had it not been sold then, it still would certainly have been held as part of the controlling interest and must be valued as such. In Hamm v. Commissioner of Internal Revenue, 325 F.2d 934 (8th Cir. 1963), the Court expressed doubt as to the validity of valuing a portion of family held stock as a minority interest when the controlling interest was owned by the family. The Court in *Hamm* did not fully express its reasoning but its statement reflects the considerations stated above.

The Court concludes from all of the evidence that the principle of discounting the value of stock to allow for a minority interest factor should not be applied in this instance. The evidence concerning the proposed sale being negotiated at the time the gifts were made proves that all parties concerned knew that the gifted stock was worth over $700 per share. A fair construction of Section 2512 of Title 26, U.S.C., requires that the stock be valued as part of a controlling interest in the bank. No case involving similar facts has been found, and the many cases dealing with valuation of unlisted stock provide little assistance. The novel questions raised in this instance cannot be answered by reliance on valuation principles which were developed in dissimilar cases.

In view of the conclusion that the stock should be valued as part of the controlling interest, there can be little dispute about the value placed on the shares by the Commissioner. The price of $707.45 paid for the gifted shares is the best evidence of value. See Fitts' Estate v. Commissioner, 237 F.2d 729 (8th Cir. 1956); Union Nat. Bank of Pittsburgh v. Driscoll, 32 F.Supp. 661 (W.D.Pa.1940); Estate of Ridgely v. United States, 67-2 U.S.T.C. Par. 12,481 (Ct.Cl.1967). As the Government points out, the price paid for stock held by Clyde Blanchard and by Mrs. Blanchard as trustee was greater than $707.45 per share, indicating the reasonableness of the Commissioner's value. The sales of these segments of Blanchard stock were the only comparable sales. Additional proof of the value of the stock is found in the accountant's report which showed that the price paid was probably less than the true value.

There is no need to consider the issue of equitable recoupment since the taxpayer will not receive a refund.

Accordingly, it will be ordered that the Complaint be dismissed. It will also be ordered that costs of this action shall be paid by the plaintiff.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.