The ESTATE of Mary Frances Smith BRIGHT, Deceased, by H. R. Bright, Independent Executor, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 78–2221.

United States Court of Appeals, Fifth Circuit.

June 18, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Philip I. Brennan, Richard W. Perkins, Gilbert E. Andrews, Acting Chief, Tax Div., U. S. Dept. of Justice, Washington, D. C., for the U. S.

Thompson, Knight, Simmons & Bullion, J. W. Bullion, Emily A. Parker, Payne & Spradley, Robert B. Payne, Dallas, Tex., for plaintiff-appellee.

Before VANCE and SAM D. JOHNSON, Circuit Judges, and THOMAS *, District Judge.

SAM D. JOHNSON, Circuit Judge:

This is an appeal by the Government from a successful suit in the district court for a refund of over $3 million in federal

* District Judge of the Southern District of Alabama, sitting by designation.

estate taxes and assessed interest. The only issue before the district court was the fair market value of the interest of the decedent, Mary Frances Smith Bright, in a series of closely held companies. Before her death, decedent and her husband held 55% of the stock in each of these companies as their community property. The only issue in this appeal is whether the district court erred in ruling, as a matter of law before it took evidence on fair market value, that "no element of control [could] be attributed to the decedent in determining the value of the decedent's interest in the stock of" the closely held companies. We hold that the district court erred in entering that order and remand for further proceedings.

### I

Mary Frances Smith Bright died in Dallas, Texas on April 3, 1971. Until the time of her death, she and her husband, H. R. Bright, owned as their community property 55% of the common stock of ETMF and The Rock Companies and 55% of the common and preferred stock of Southern Trust.[1] Under Texas law, the death of one spouse terminates the community and divides the community property into two equal undivided interests, one going to the surviving spouse and the other to the deceased spouse's estate. *Caddell v. Lufkin Land & Lumber Co.*, 255 S.W. 397 (Tex. Comm'n App.1923, jdgmt. adopted). The undivided one-half interest in the former community property that accrues to the estate of the deceased spouse passes under that spouse's will and is subject to the federal estate tax. *Commissioner v. Chase Manhattan Bank*, 259 F.2d 231, 239 (5th Cir. 1958), *cert. denied*, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959). In this case, the decedent's will devised her interest in the stock of the various companies to a trust. Thus, 27.5% (one-half of 55%) of the stock in

the various companies passed under the decedent's will to the trust. Mr. Bright is the trustee of that trust and the children of the decedent and Mr. Bright are the beneficiaries.

The issue before the district court in this case was the fair market value of the decedent's undivided one-half interest in 55% of the stock of Southern Trust, ETMF and The Rock Companies. The fact that one-half the value of 55% of the stock in these various companies is not necessarily the same as the value of one-half of 55% (that is, 27.5%) of the stock of the companies complicates this determination. The courts have frequently recognized that the per share value of a block of stock that controls a corporation may be greater than the per share value of a block of stock that does not control that corporation. *See, e. g., Whittemore v. Fitzpatrick*, 127 F.Supp. 710 (D.Conn.1954); *Worthen v. United States*, 192 F.Supp. 727, 730–31 (D.Mass. 1961). *See also* 10 J. Mertens, Law of Federal Income Taxation § 59.12 at n. 19 (1976). The difference between the per share price of a block of stock that controls a corporation and one that does not is known as a "control premium." *See generally*, Hill, The Sale of Controlling Shares, 70 Harv.L. Rev. 987 (1957).

The district court's pre-trial order directed, in effect, that as a matter of law the 27.5% of the corporate stock that passed under the decedent's will had no control premium attached to it for the purposes of estate tax valuation. After entering its pre-trial order, the district court heard evidence on the fair market value of the 27.5% interest of the decedent's estate in the various companies. Both the Government and the decedent's estate adhered to the district court's order and presented evidence with the assumption that the estate held a 27.5% minority interest in the various companies. The district court determined that the fair

---

1. "Southern Trust" stands for Southern Trust and Mortgage Company; "ETMF" stands for East Texas Motor Freight Lines, Inc.; and "The Rock Companies" stands for 27 different corporations each of which is named after a mineral. Some of The Rock Companies take their names from common minerals e. g., Quartz Corporation, Graphite Corporation, and Calcite Corporation. Other of The Rock Companies take their names from more obscure minerals e. g., Wolframite Corporation, Orthoclase Corporation, and Chalcopyrite Corporation.

market value of the stock was $1.2 million. The Government does not challenge this finding of fact on appeal. This Court must therefore affirm the district court's determination of value unless the pre-trial order was erroneous in excluding consideration of a control premium as a matter of law.

## II

The Government argues that the pre-trial order ignored the realities in this case. The Government argues that the district court should have viewed the decedent's interest in the stock of the companies in conjunction with her husband's interest. Relying on cases involving the valuation of an undivided interest in real property,[2] instead of corporate stock, the Government asserts that the district court should have held a hearing to determine whether the 27.5% of the stock in the companies would ever have been sold as a minority interest or whether it would have been sold only as part of a control block. If the decedent's 27.5% holdings would never have been sold separately as a minority block and would have been sold only as part of a control block, the Government asserts that the district court erred in refusing to attribute a control premium to those shares.

The decedent's estate argues that the district court's pre-trial order was proper. It reasons as follows. Congress imposed the federal estate tax on the value of the interest transferred at death. Congress did not impose the estate tax upon the interest owned by the decedent or the interest to which the devisees succeeds. *United States v. Land*, 303 F.2d 170 (5th Cir.), *cert. denied*, 371 U.S. 862, 83 S.Ct. 121, 9 L.Ed.2d 100 (1962). In this case, the interest transferred was a 27.5% share of the various companies. Fair market value is the price that a willing buyer would pay a willing seller. Here, a willing buyer buying the 27.5% share transferred by the decedent's estate would not have paid any control premium for that share because it was only a minority interest. The decedent's estate has two cases that support this result. *In re Estate of Lee*, 69 T.C. 860 (1978); *Sundquist v. United States*, 34 A.F.T.R.2d 74–6337 (E.D. Wash., Nov. 9, 1974), supplemental opinion disposing of other issues, 35 A.F.T.R.2d 75–1606 (1975).

## III

We adopt the decedent's estate's approach of applying the definition of fair market value to the interest transferred at death, but we reach a result favorable to the Government. The fair market value of the 27.5% interest in the various companies that passed under the decedent's will is the price at which that interest would have changed hands "between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 20.2031–1(b). The willing buyer and seller who set the fair market value of property are hypothetical, but they have knowledge of all relevant facts. *See United States v. Simmons*, 346 F.2d 213 (5th Cir. 1965). We hold that one of the relevant facts that determines the value of shares of corporate stock is whether these shares are part of a block of shares that control the corporation.

In this case, the decedent's estate argues that $1.2 million, as found by the district court, is the fair market value of the 27.5% interest that passed under the decedent's will. The estate supports this argument by pointing out that no control inhered in the 27.5% interest and that a willing buyer would not have paid a control premium for a set of shares that did not provide control. The Government, by not directly challenging the district court's finding of a fair market value of $1.2 million, concedes that a willing buyer would have paid no more than $1.2 million for a 27.5%

---

2. The Government cites *Cutbirth v. United States*, 38 A.F.T.R.2d 6271 (N.D.Tex., June 16, 1976); *Dattel v. United States*, 37 A.F.T.R.2d 1525 (N.D.Miss., October 29, 1975); and *Blackburn v. United States*, 6 A.F.T.R.2d 6146 (S.D. Ind., July 20, 1960).

interest that did not provide control.[3] The test used to determine fair market value is conjunctive: the district court was bound to find a price at which both a willing buyer *and a willing seller would have traded.* The price at which a willing buyer but not a willing seller would have traded does not determine fair market value. In this case, if a willing buyer would have paid $1.2 million, he would also have paid $1.1 million, $1.0 million, or any other amount less than $1.2 million. The decedent's estate does not argue that the fair market value of the interest transferred in this case is $1.0 million because a willing buyer would have gladly paid that for the 27.5% interest.

The question in this case becomes: Would a hypothetical willing seller with knowledge of all relevant facts have taken $1.2 million for the 27.5% interest in the various companies? In reaching its answer to this question, the district court failed to consider one relevant fact. The 27.5% interest transferred here was part of a control block. The 27.5% interest would not have been transferred by itself unless the hypothetical seller had been willing to break up the control block and sacrifice his share of the control premium. The district court's pre-trial order directed the parties to prepare for the valuation hearing on the assumption that no control inhered in the 27.5% shares of the various companies. Thus, the district court assumed that a willing seller would have broken up the control block and sold his shares as a minority interest. This was reversible error. The district court should have first held an evidentiary hearing to determine whether a willing seller would have broken up the control block of which his shares were a part and sacrificed his control premium or whether a willing seller

would only have sold his 27.5% interest as part of a control block.

We reach this result by reasoning from accepted principles, not by applying established precedent. We therefore do not think it possible to set forth all the factors the district court should consider in making its determination on remand. We can, however, offer some guidance to the district court by discussing some of the factors that it should consider in deciding whether a willing seller would have broken up the control block and sacrificed his control premium. The amount of the control premium inhering in the shares that are to be evaluated is a key factor in determining whether a willing seller would have sacrificed that control premium.[4] Of course, a seller would be more willing to sacrifice a minimal than a sizable control premium. Another factor the district court should consider on remand is whether a seller would be able to find a buyer for a minority position. In some cases, it may be that no one would willingly buy into a minority position. In other cases, all the shareholders in the control group, as a matter of fact, may be unwilling to sell their shares so that the hypothetical willing seller could only sell his interest as a minority interest. These are just some of the factors that the district court should consider in determining whether a hypothetical seller in this case would have sacrificed his control premium. The district court can consider any other factor it decides would be relevant to the decision of the hypothetical willing seller to sacrifice his control premium.

The Government argues that there should be a presumption that the

---

**3.** The Government has not taken the alternative position in its brief or at argument that even if the district court's pre-trial order refusing to attribute control to the 27.5% share was proper, the district court's determination of $1.2 million value was erroneous.

**4.** The parties have assumed that the 55% blocks of stock held by the community of the decedent and her husband did have some control premium. The district court will have to determine the magnitude of this premium on

remand. We intimate no view whether the amount of the premium is minimal or sizable.

In some cases, shares of stock subject to the estate tax may have had some control premium attached to them both as part of the undivided block that existed before death and as part of the divided block that passed at death. In such cases, the control premium the district court should focus on is still simply the per share price differential between the pre-death and the at-death blocks.

27.5% interest in the various companies transferred under the decedent's will would only have been sold as part of a controlling block of shares. The factual basis that the Government's asserts supports its presumption is the family relationship between the controlling shareholders and the fact that the controlling shares were all held in the name of the decedent's husband. These facts are relevant to the determination the district court must make on remand, but we do not find any authority for their creating a presumption. Generally, the taxpayer has the burden of showing that his valuation of property is correct. *Rushton v. Commissioner*, 498 F.2d 88 (5th Cir. 1974). Thus, on remand the decedent's estate will have the burden of persuading the fact finder that a willing seller would have sacrificed his control premium and of producing evidence to that effect.

The result we reach in this case is contrary to the results reached by the courts in the cases cited by the estate, *Lee* and *Sundquist*. Those cases are not easily distinguishable from the instant case. We do not, however, find them persuasive. Furthermore, the real property cases cited by the Government and a gift tax case involving a family controlled corporation support this Court's result. *See generally Blanchard v. United States*, 291 F.Supp. 348 (S.D. Iowa 1968) (attributing a control premium to separate gifts of parts of a control block that would have been minority interests if viewed individually while relying in part on testimony that the gifts would not have been sold outside of a control block).

## IV

The district court's valuation of the 27.5% interest in the various companies at $1.2 million is vacated. Remand is made for a determination whether a willing seller, with knowledge of all relevant facts, would have sacrificed his control premium and sold a 27.5% interest in the various companies outside of the control block. If the district court determines that a willing seller would not have sacrificed his control premium, then it must make a new determi-

nation of the value of the 27.5% interest. It must attribute control to those shares in that new valuation. If, however, the district court determines that a willing seller would have sacrificed his control premium, then the district court's valuation of the 27.5% interest at $1.2 million must stand as the Government has not challenged that finding of fact in this appeal.

VACATED AND REMANDED.