ESTATE OF JOSEPH A. VAK, DECEASED, JOSEPH R. VAK, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Vak v. Commissioner
Docket No. 15676-89
United States Tax Court
T.C. Memo 1991-503; 1991 Tax Ct. Memo LEXIS 552; 62 T.C.M. (CCH) 942; T.C.M. (RIA) 91503; October 2, 1991, Filed *552 Decision will be entered for the respondent. Guy G. Curtis, for the petitioner. Mark S. Heroux, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM OPINION Respondent determined a deficiency in the Federal gift tax of Joseph A. Vak (now deceased) for the calendar year 1985 in the amount of $ 278,300 and an addition to tax pursuant to section 6660[1] for a valuation understatement in the amount of $ 83,490. The issues for decision are: (1) When was the transfer of property by Joseph A. Vak complete for gift tax purposes; (2) what was the property which was the subject of the gift; (3) what was the value of the property transferred by gift; and (4) whether petitioner is liable for an addition to tax pursuant to section 6660 for the calendar year 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Joseph R. Vak, the personal representative *553 of Joseph A. Vak, deceased, was a resident of Nebraska at the time the petition in this case was filed. Joseph A. Vak (Mr. Vak) was a resident of Nebraska during his lifetime and at the date of his death. On January 1, 1975, Mr. Vak incorporated Joe Vak Farms, Inc. (Farms), in Nebraska to own and operate ranches and farms, and on January 2, 1975, he received 5,000 shares of stock in Farms. Subsequent to the incorporation Mr. Vak made gifts of stock in Farms to members of his family so that as of January 1, 1981, stock ownership in Farms was as follows: Name
Number of shares
Joseph A. Vak
2,757
Joseph R. Vak
1,945
Julie A. Vak
55
James Vak
81
Jarwyn Vak
81
Joseph Adam Vak
81
On January 2, 1981, Mr. Vak created the Joseph A. Vak Trust (Trust). Paragraph II, "Trustees," provided in part as follows: 3. In the event of death, removal from office, resignation, or cessation of his duties from any other cause of a Trustee, the grantor if alive shall appoint a successor independent Trustee (not related or subordinator to the grantor); otherwise, the remaining Trustees shall appoint or elect a successor by the unanimous concurrence, or formal vote, of the remaining *554 Trustees. In anticipation of an event which could result in the entire Board of Trustees, or the grantor, becoming vacant at the same time, such as simultaneous deaths or resignations, the Trustees, other than the grantor, may by unanimous vote appoint one or more successor independent Trustees to assume office in that event (not related or subordinate to the grantor). In the event of the complete failure to appoint a successor Trustee as specified above, a majority of the beneficiaries shall appoint a successor Trustee. * * * 7. Notwithstanding anything to the contrary herein, the grantor may remove any Trustee serving hereunder at any time and from time to time, with or without cause, and appoint a successor Independent Trustee (not related or subordinate to the grantor within the meaning of Section 672(c) of the Internal Revenue Code).
In the Trust instrument, Mr. Vak's son, Joseph R. Vak (Joseph Vak), and Mr. Vak's daughter-in-law, Julie A. Vak, were named as trustees. The trustees, other than the grantor, could elect to either distribute or accumulate the current income of the Trust, in whole or in part, for any or all of the beneficiaries, and the trustees, other than *555 the grantor, had unrestricted sprinkling power among beneficiaries for both corpus and income. No beneficiary was entitled to a corpus distribution as a matter of right except on final termination of the Trust at which time any remaining corpus would be distributed according to each beneficiary's interest in the Trust. The Trust was to continue for 25 years unless the trustees, other than the grantor, either set an earlier termination date or renewed the Trust for a like or shorter period. The Trustees were given broad powers to manage, sell, or otherwise deal with the trust corpus. Beneficial interest in the Trust was divided into 100 "Class A" certificate units. Each unit represented a 1-percent pro rata interest in both income and corpus of the Trust. Neither the Trust nor any trustee had any power or control over the beneficial interest certificates. On January 2, 1981, Mr. Vak, as grantor, transferred his 2,757 shares in Farms to the Trust in exchange for the 100 units of beneficial interest. Mr. Vak could transfer all or any part of his 100 units of beneficial interest in the Trust at any time without restriction. On January 2, 1981, Mr. Vak transferred 50 of his 100 *556 units of beneficial interest in the Trust, one-third to each of his three grandchildren, James Vak, Jarwyn Vak, and Joseph Adam Vak, jointly with Joseph Vak. Each of the grandchildren received 16-2/3 units of beneficial interest in the Trust jointly with his father, Joseph Vak. On April 8, 1981, Mr. Vak filed his United States Quarterly Gift Tax Return for the tax period ending March 31, 1981. On the gift tax return, Mr. Vak reported taxable gifts in the amount of $ 184,560, and showed a gift tax due of $ 2,859 resulting from the January 2, 1981, transfer of 50 units of beneficial interest in the Trust. The amount shown as due on the return was paid on May 15, 1981. On February 7, 1985, this Court entered a decision pursuant to the stipulation of the parties that Mr. Vak had made an overpayment in gift tax in the amount of $ 2,859 for the period ending March 31, 1981. On January 2, 1982, Mr. Vak transferred 23 of his remaining 50 units of beneficial interest in the Trust to family members. Subsequent to the transfer, the ownership of units of beneficial interest in the Trust was as follows: Name
Percentage
Joseph Vak and James Vak
16 2/3
Joseph Vak and Jarwyn Vak
16 2/3
Joseph Vak and Joseph Adam Vak
16 2/3
Joseph Vak and Julie A. Vak (tenants in common)
5
James Vak
6
Jarwyn Vak
6
Joseph Adam Vak
6
Joseph A. Vak (grantor)
27
*557 On March 1, 1982, Mr. Vak filed his United States Quarterly Gift Tax Return for the tax period ending March 31, 1982. On the gift tax return, Mr. Vak reported taxable gifts in the amount of $ 39,682, but showed no gift tax due as a result of the January 2, 1982, transfer of 23 units of beneficial interest in the Trust. On July 3, 1985, this Court, pursuant to stipulation of the parties, entered a decision determining that there was no deficiency in gift tax due from, or overpayment due to, Mr. Vak for the taxable year 1982. On January 16, 1984, Joseph Vak was named conservator and guardian for Mr. Vak. On February 16, 1985, Joseph Vak, as conservator and guardian for Mr. Vak, petitioned the County Court of Perkins County, Nebraska, for an order approving an attached Declaration, which would amend the original Trust, and to permit the making of gifts of all or part of the beneficial units in said Trust to his son, Joseph Vak, who is "the sole devisee under the protected person's will, and to the son's family, for estate planning purposes." On February 18, 1985, the County Court of Perkins County entered an order approving the Declaration amending the Trust and authorized Joseph *558 Vak to make and execute gifts of all or part of the beneficial units of said Trust belonging to the protected person, Mr. Vak, to the protected person's son, Joseph Vak, and his family. Pursuant to the Declaration, the grantor relinquished his right to remove any trustee and to appoint a successor trustee, and the sprinkling power by the trustees was limited by excluding the grantor as an eligible distributee, with the grantor relinquishing and renouncing the right to receive any amount under such sprinkling power. The duration of the Trust was set at 25 years. On February 18, 1985, at a special meeting of the Board of Trustees, the trustees purported to cancel certificates of beneficial interest numbers 2 through 8, thereby attempting to cancel Mr. Vak's 1981 and 1982 transfers. On November 1, 1985, at a meeting of the Board of Trustees, the trustees again purported to cancel all previous certificates of beneficial interest except the original 100 issued to Mr. Vak. Joseph Vak, conservator and guardian of Mr. Vak, a protected person, then purported to assign the 100 certificates of beneficial interest in the Trust as follows: Name
Percentage
Joseph Vak and Julie A. Vak (tenants in common)
25
James Vak
25
Jarwyn Vak
25
Joseph Adam Vak
25
*559 The last sentence of each of the Certificates of Beneficial Interest executed by Joseph Vak and Julie A. Vak, which were purported to be issued on November 1, 1985, stated that "This Certificate conveys no interest of any kind in The Trust assets, management or control thereof." As of February 18, 1985, the value of the 2,757 shares of Farms, prior to any applicable discounts, was $ 1,132,438. As of November 1, 1985, the value of the 2,757 shares of Farms, prior to any applicable discounts, was $ 1,102,800. On a Quarterly Gift Tax return filed on behalf of Mr. Vak for the taxable quarter ended December 31, 1985, the purported November 1, 1985, gift was valued at $ 86,580. The return shows no tax due. In the notice of deficiency, respondent determined that the gift was completed on February 18, 1985, that the 2,757 shares in Farms were the property which was the subject of the gift, and that the taxable value of the gift was $ 1,132,438. He further determined that the underpayment of gift tax required to be shown on the gift tax return was due to a valuation understatement and that a 30-percent addition to tax was applicable. OPINION Section 2501(a) provides for a tax on the *560 transfer of property by gift during a calendar year by any individual. Section 2511(a) provides that, subject to certain limitations, the gift tax applies whether the transfer is in trust or otherwise, direct or indirect, and whether the property transferred is real or personal, tangible or intangible. [2]
*561 As provided in section 25.2511-2(c), Gift Tax Regs., a gift is incomplete where the donor reserves the power to revest the beneficial title to the property in himself. It is well settled that no completed gift occurs from a conveyance in trust where the donor retains dominion and control over the property transferred. Sec. 25.2511-2, Gift Tax Regs.; Sanford's Estate v. Commissioner, 308 U.S. 39, 84 L. Ed. 20, 60 S. Ct. 51 (1939); Burnet v. Guggenheim, 288 U.S. 280, 77 L. Ed. 748, 53 S. Ct. 369 (1933); Outwin v. Commissioner, 76 T.C. 153, 159-160 (1981). It is the transfer of the control over the beneficial enjoyment of property that is the event giving rise to the gift tax. Robinette v. Helvering, 318 U.S. 184, 87 L. Ed. 700, 63 S. Ct. 540 (1943); Smith v. Shaughnessy, 318 U.S. 176, 87 L. Ed. 690, 63 S. Ct. 545 (1943). Taxation of a transfer of property is not so much concerned with the refinements of title as with actual command over the property. Retention of control over the disposition of trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished. Sanford's Estate v. Commissioner, supra.
Each party *562 recognizes the principles set forth above and agrees that no gift was made upon the transfer of the Farms stock to the Trust on January 2, 1981, or because of the transfer of 50 units of beneficial interest in the Trust on that date, since Mr. Vak retained control over the property transferred to the Trust and a right to receive that property back. For the same reason both parties recognize that Mr. Vak made no gift on January 2, 1982, when he transferred additional units of beneficial interest in the Trust. The parties disagree as to whether Mr. Vak made a gift on February 18, 1985, or November 1, 1985, and also disagree as to what property constituted the gift by Mr. Vak. Petitioner contends that the grantor, the sole initial holder and owner of the beneficial units in the Trust, made a gift of these units of beneficial interest on November 1, 1985, when Joseph Vak as Mr. Vak's conservator and guardian issued 25 units of beneficial interest to each grandchild of Mr. Vak and 25 units to Joseph and Julie A. Vak as tenants in common. Respondent contends that the gift occurred on February 18, 1985, when the Declaration of Trust was amended. Respondent contends that the amendment *563 to the Trust Declaration caused Mr. Vak to part with his interest in the Farms stock and make a completed gift. Respondent does not agree with petitioner that the taxable gift was of certificates of beneficial interest in the Trust. He argues that the purported cancellations of prior transfers on February 18, 1985, and November 1, 1985, of certificates of beneficial interest were invalid as cancellations of the beneficial interest certificates and were not permitted by either the Trust document or the order of the County Court. It is respondent's position that the property given on February 18, 1985, was the 2,757 shares of Farms stock. As originally executed, the Trust agreement provided that neither the Trust nor any trustee had power or control over the beneficial interest certificates. Pursuant to the Order Approving Powers of Conservator (order), the conservator was authorized to execute the Declaration amending the Trust agreement on behalf of Mr. Vak and make gifts of all or part of the beneficial units belonging to Mr. Vak to Joseph Vak and his family. It should be noted that although the petition of the conservator is somewhat ambiguous as to which certificates of beneficial *564 interest were to be given, the court order is clear that only certificates belonging to Mr. Vak at the date of the order could be given. At the date of the court order Mr. Vak owned only 27 certificates. Neither the order of the court nor the amendment to the Trust agreement alters the power or control of the trustees over the beneficial interest certificates beyond granting the conservator the right to make gifts of the 27 units still held by Mr. Vak. Because neither the original Trust agreement nor the amendment gave the trustees the power to cancel certificates, the attempts on February 18, 1985, and on November 1, 1985, to cancel certificates are without effect. Disregarding the ineffectual actions of the trustees, on February 18, 1985, the beneficial units were held as follows: Name
Percentage Joseph Vak and James Vak
16 2/3
Joseph Vak and Jarwyn Vak
16 2/3
Joseph Vak and Joseph Adam Vak
16 2/3
Joseph Vak and Julie A. Vak (tenants in common)
5
James Vak
6
Jarwyn Vak
6
Joseph Adam Vak
6
Joseph A. Vak (grantor)
27
Under the State law of Nebraska, a trustee can be relieved of any restriction on his power. Neb. Rev. Stat. sec. 30-2822(1) (1984). [3] Pursuant *565 to the order of February 18, 1985, approving execution of the Declaration, the grantor relinquished his right to remove any trustee and was eliminated as an eligible distributee. By relinquishing the power to remove any trustee, Mr. Vak released dominion and control over the property he had transferred to the Trust, the 2,757 shares of Farms stock, and by removing himself from receiving any distribution of income or corpus of the Trust he rescinded any right he had to regain ownership of the stock or profit income from the stock. Therefore on February 18, 1985, Mr. Vak made a completed gift of the stock to the Trust. After February 18, 1985, the trustees had absolute control in determining to which of the beneficiaries (except the grantor), and in what proportion, income and corpus of the Trust would be sprinkled. The amount of a distribution and to which beneficiary (except the grantor) was dependent entirely on the unfettered discretion of the trustee. Accordingly, on February 18, 1985, the gift was complete. See Smith v. Shaughnessy, 318 U.S. 176, 87 L. Ed. 690, 63 S. Ct. 545 (1943). See also, Estate of Goelet v. Commissioner, 51 T.C. 352 (1968). *566 The fact that Mr. Vak retained 27 units of beneficial interest does not change this result. By relinquishing his right to remove the trustee and eliminating himself as an eligible distributee, Mr. Vak gave up dominion and control over the property transferred to the Trust, the stock, and with this relinquishment the gift of the stock was complete. See Fletcher Trust Co. v. Commissioner, 141 F.2d 36 (7th Cir. 1944), affg. 1 T.C. 798 (1943). Since none of the corpus or income of the Trust could be distributed to him, Mr. Vak retained no interest in the Farms stock transferred to the Trust after February 18, 1985. The gift to be valued is the property over which the grantor has relinquished dominion and control. The essence of a gift by trust is the abandonment of control over the property put in trust. Smith v. Shaughnessy, supra at 181. By relinquishing his power to remove trustees and any right to corpus or income of the Trust, Mr. Vak abandoned control over the Farms stock, the property put in the Trust. Accordingly, it is the stock in Farms that is the subject of the gift and not the certificates of beneficial *567 interest. See sec. 25.2511-2(a), Gift Tax Regs. Petitioner argues that the gift was of the beneficial units of the Trust. However, the cases cited by petitioner in support of that contention address the issue of the effect of restrictions for purposes of valuation. Estate of Newhouse v. Commissioner, 94 T.C. 193 (1990), and Estate of Hall v. Commissioner, 92 T.C. 312 (1989), address the issue of the value of shares of stock held by a decedent at the time of death. Estate of Reynolds v. Commissioner, 55 T.C. 172 (1970), involves the valuation of transfers inter vivos and at death of certificates which represent common stock stripped of all voting rights. Citizens Bank & Trust Co. v. Commissioner, 839 F.2d 1249 (7th Cir. 1988), affg. Northern Trust Co. v. Commissioner, 87 T.C. 349 (1986), while cited by petitioner, supports a finding that the property to be valued is the stock transferred to the Trust. In Citizens Bank & Trust Co. v. Commissioner, supra, four siblings each owned 25 percent of both voting and nonvoting common stock in a company. The four *568 siblings wanted to maintain family ownership of the company as far into the future as possible. Each created an identical trust and transferred all of his or her voting stock to the trust. Three of the four also created identical trusts and transferred all of his or her nonvoting stock to the trust. There was no dispute among the parties that it was the stock transferred to the trusts that was the subject of the gift. The issue before the court was whether the terms of the trusts should be taken into account in valuing the stock transferred. The Seventh Circuit Court of Appeals held that the value of the stock was not altered by the terms of the conveyance. In reaching this conclusion, the court noted the distinction between restrictions placed on the property before the transfer and restrictions placed on the property after the transfer. The facts in the present case are similar to Citizens Bank & Trust Co. v. Commissioner, supra, in that, while there were restrictions on the certificates of beneficial interest, there were no restrictions placed on the stock before it was transferred to the Trust. The effect of the restrictions on the certificates in *569 the hands of the beneficiaries is not relevant in determining the value of the property transferred as a gift, the Farms stock. The fact that Mr. Vak had transferred the certificates of beneficial interest prior to the gift does not change this result as, regardless of the timing of the transfer of the certificates, it is still the stock that is the subject of the gift, and it is the stock that must be valued for gift tax purposes. The standard of valuation for gift tax purposes is the fair market value of the property. Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of the relevant facts. Sec. 25.2512-1, Gift Tax Regs. The valuation of stock presents a question of fact, and the trier of fact has the duty to weigh all relevant evidence and to draw appropriate inferences therefrom. Hamm v. Commissioner, 325 F.2d 934, 938 (8th Cir. 1963), affg. a Memorandum Opinion of this Court. Petitioner contends that what was transferred were separate gifts to the beneficiaries, each constituting a minority interest *570 in Farms, and the fact that the gifts were of a minority interest affects their value. Petitioner cites Blanchard v. United States, 291 F. Supp. 348 (S.D. Iowa 1968), and Whittemore v. Fitzpatrick, 127 F. Supp. 710 (D. Conn. 1954), in support of this contention. Respondent's primary position is that the gift was of 2,757 shares in Farms, which on February 18, 1985, had a fair market value of $ 1,132,438. When Mr. Vak relinquished dominion and control over the stock of Farms he transferred that same control to the trustees. They had the power to sprinkle both income and corpus among the beneficiaries (excluding Mr. Vak). No beneficiary was entitled to a corpus distribution as a matter of right, except on termination of the Trust. The amount of income and corpus to be distributed and to which beneficiaries the distributions would be made was within the unfettered control and discretion of the trustees, and any distributions made by the trustees would not be dependent on the amount of beneficial interest held by each beneficiary. In other words, by releasing control over the stock, Mr. Vak did not transfer a specific amount of corpus or income *571 to any beneficiary. Under these facts, it is not possible to determine what each beneficiary would ultimately receive, if anything. At the time of the transfer the ultimate beneficiaries of the Trust were undeterminable. When Mr. Vak released dominion and control over 2,757 shares of stock, he transferred control of that stock to the Trust. Because there was no division of interest in the stock at the time of transfer, there is no basis for valuing separately portions of the stock transferred, but rather the entire stock transferred is to be valued as a whole. The cases cited by petitioner in support of this contention are distinguishable from the facts before the Court. In Whittemore v. Fitzpatrick, supra, a father owning all 820 outstanding shares of stock in a family corporation transferred 600 shares by irrevocable trust deed for the equal benefit of his three sons. The court found that the transfer should be treated as three separate gifts for gift tax purposes. Under the present facts, a trust was created from which certificate holders might benefit in an amount that is currently undeterminable. In Blanchard v. United States, supra, *572 a taxpayer owning the controlling interest in a bank made gifts of all the stock to six trusts for the benefit of her six grandchildren. Twenty one days later, the trustees sold the stock held in trust to one buyer. The issue before the court was whether the stock should be valued as part of a control block. In considering all the evidence, the court noted that the stock transferred was under the control of the Blanchard family, that the proposed sale of the stock was being negotiated at the time the gifts were made, and that all parties involved knew that the stock was worth the higher value. The court held that the stock was to be valued at the higher, control-block value. This case does not support petitioner's contention that the stock should be considered as having been transferred as separate gifts. The parties have stipulated that as of February 18, 1985, the value of the 55.14-percent block of Joe Vak Farms, Inc., stock was $ 1,132,438. Accordingly, the value of the gift for purposes of the gift tax provisions is $ 1,132,438. Section 6660(a) provides for an addition to tax in the case of any underpayment of estate and gift tax attributable to a valuation understatement. *573 There is a valuation understatement when the value of property shown on a return is 66-2/3 percent or less of the amount determined to be the correct amount. Sec. 6660(c). We have determined the value of the gift made by Mr. Vak in 1985 to be $ 1,132,438. The value shown on the return, $ 86,530, is less than 66-2/3 percent of the correct amount. Accordingly, imposition of the addition to tax is proper. Because the valuation shown on the return is less than 40 percent of the correct valuation, the addition to tax is equal to 30 percent of the underpayment attributable to the undervaluation. Sec. 6660(b). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code as amended and in effect for the year in issue.↩
2. Sec. 25.2511-2, Gift Tax Regs., provides in part: (a) The gift is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable. (b) As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. * * * (c) A gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself. * * * * * * (e) A donor is considered as himself having a power if it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income.↩
3. Neb. Rev. Stat. sec. 30-2822(1) (1984), provides: Sections 30-2819 to 30-2826 do not affect the power of a court of competent jurisdiction for cause shown and upon petition of the trustee or affected beneficiary and upon appropriate notice to the interested persons to relieve a trustee from any restrictions on the trustee's power that would otherwise be placed upon the trustee by the trust or by sections 30-2819 to 30-2826↩.