943 F.2d 906
 68 A.F.T.R.2d 91-5565, 91-2 USTC P 50,449
 MUSCO SPORTS LIGHTING, INC., f/k/a Sports Acquisition Co.,
Successor by merger with Musco, Inc., a/k/a Musco
Sports-Lighting, Inc., Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 No. 90-2925.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 14, 1991.
Decided Sept. 9, 1991.
 
 Burns Mossman, Des Moines, Iowa, for appellant.
 Janet Bradley, Washington, D.C., argued (Shirley D. Peterson, Gary R. Allen and Robert S. Pomerance, on brief), for appellee.
 Before WOLLMAN and MAGILL, Circuit Judges, and HENLEY, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Musco[1] Sports Lighting, Inc. appeals the tax court's refusal to allow certain investment tax credits. We affirm.I.
 
 
 2
 Musco custom designs, manufactures, and distributes lighting systems for athletic facilities. The lighting systems consist of light fixtures bolted to poles at the facilities. During 1981 and 1982, Musco contracted to install lighting systems for thirty-one customers who were governmental units under Internal Revenue Code § 48(a)(5), 26 U.S.C. § 48(a)(5) (1954)[2], and three customers who were tax-exempt organizations under section 48(a)(4). Under each "Lighting Service Agreement," the customer made an initial payment for the first year and had the right to renew and pay additional fees for each of the next four or five years. While the cost of the arrangement to the customer was calculated on an annual basis, the cost did vary somewhat by intensity of use. Customers could purchase the lighting system at the end of the five or six year period, generally for a price of $30 per fixture. Each of the thirty-four customers exercised that option.
 
 
 3
 Under the agreements, Musco retained title to the lighting systems and had the exclusive right to their possession and control. Musco was responsible for maintenance, which primarily involved replacing worn-out bulbs, fuses, and capacitors about once per year. The record suggests that this maintenance service accounted for approximately ten percent of each contract's value. The customers were responsible for maintaining the electrical systems to which the lighting systems were attached and for paying the reasonable costs of repairing any casualty damage. Each customer operated the lighting system(s) at its facility.
 
 
 4
 Musco claimed investment tax credits under section 38 for the lighting systems installed for the thirty-four customers. The Commissioner of Internal Revenue disallowed the tax credits after an audit. Musco petitioned the tax court to review the Commissioner's determination, and the tax court denied the credits. Musco appeals, arguing first that the tax court improperly relied on Revenue Rulings in reaching its decision and applied the wrong test. Second, Musco argues the tax court wrongly concluded that Musco leased the lighting systems to its customers. Musco contends that it used the systems to provide lighting service to the customers.
 
 II.
 
 5
 We will uphold the tax court's findings of fact unless clearly erroneous. Moser v. Commissioner, 914 F.2d 1040, 1044 (8th Cir.1990). "We will not find clear error if the tax court's account is plausible in light of the record viewed in its entirety, even if we would have weighed the evidence differently." Id. We review the tax court's conclusions of law de novo, including its application of the relevant law to the facts. Id. at 1044 & n. 11.
 
 
 6
 Since the Commissioner disallowed Musco's claimed section 38 credit, Musco bears the burden of producing evidence to overcome the presumption of correctness that attaches to the Commissioner's ruling. Rule 142(a), Rules of Practice and Procedure of the United States Tax Court; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9-10, 78 L.Ed. 212 (1933).
 
 
 7
 A taxpayer may credit against its income certain investments in property. § 38. Property which is "used by" a tax exempt organization or governmental unit, however, does not qualify for the section 38 credit. §§ 48(a)(4) & (5). Treasury regulations applicable to section 48(a) explain that property "used by" such organizations includes property "leased to" them. Treas.Reg. § 1.48-1(j), (k) (1964). Accordingly, if Musco leased the lighting system equipment to the thirty-four customers, its investment would not qualify for the section 38 credits. Smith v. Commissioner, 57 T.C.M. (CCH) 826, 829 (1989); Xerox Corp. v. United States, 656 F.2d 659, 671, 228 Ct.Cl. 406 (1981). If Musco used the equipment to provide lighting service for its customers, however, its investment would qualify for the section 38 credits. Smith, 57 T.C.M. (CCH) at 829; Xerox, 656 F.2d at 671.
 
 III.
 
 8
 Musco first argues that the tax court improperly relied on Revenue Rulings of the Internal Revenue Service in reaching its decision. A review of the tax court's decision reveals that it did not. In any case, reliance on Revenue Rulings for guidance in interpreting a statute is not improper. Smith, 57 T.C.M. (CCH) at 829 n. 7; Xerox, 656 F.2d at 671 n. 20.
 
 
 9
 Musco also argues that the tax court should have applied the factors listed in Xerox rather than those in Smith. Musco, however, refers us to no cases supporting its claim that Xerox represents binding authority that compels a result different from that reached by the tax court here. Both Xerox and Smith address the distinction between a lease and a service agreement. The tax court in Smith, after referring to Revenue Rulings and the analysis in Xerox, distilled the analysis into a four-factor test. We find this test efficient and effective, and we conclude that the tax court properly applied it in this case.
 
 
 10
 Finally, Musco argues that the tax court improperly concluded that Musco's transactions were leases rather than service contracts. The court in Smith listed four factors distinguishing leases from service contracts:
 
 
 11
 (1) which party has the use and possession or control of the equipment; (2) which party operates the machine; (3) whether the tax-exempt organization [or governmental unit] pays for the use of the machine for some duration or, instead, pays based upon the number of procedures executed; and (4) whether the equipment is part of a broader, integrated system of equipment and services.
 
 
 12
 Smith, 57 T.C.M. (CCH) at 831.
 
 
 13
 The first factor involves determining which party had the use and possession or control of the equipment. Musco installed the lighting systems at its customers' athletic facilities across the country. While Musco retained the right to move the systems and the right of access to the systems for maintenance, the customers controlled the systems' operation. We therefore find that Musco did not have the use and possession or control of the equipment.
 
 
 14
 The second factor requires us to determine which party operated the equipment. Once Musco installed the equipment, it played no further role in its operation, aside from annual maintenance. We conclude that the customers operated the lighting systems, not Musco.
 
 
 15
 The third factor, whether the customer paid per time period or per procedure, presents a closer question. While Musco calculated the cost of the contract to the customer on a yearly basis rather than strictly per use, the contract price did vary by intensity of usage. At the lowest usage level, 0-300 hours, customers paid $138 or $145 per fixture, depending on the type of lighting system. At the highest usage level, 701 hours and up, customers paid $163 or $170 per fixture. Thus, comparing the lowest and highest usage rates, the yearly cost rose only 17% to 18% while the corresponding usage increased by more than 200%. On these facts, we cannot conclude that Musco's customers paid for lighting services on the basis of the number of procedures executed.
 
 
 16
 The fourth factor addresses whether the equipment was part of a broader, integrated system of equipment and services. Musco's contracts did require that Musco maintain the lighting systems. The portion of the contract price attributable to the equipment Musco installed, however, far outweighed the portion attributable to the maintenance service Musco provided. We therefore conclude that the essential nature of these contracts was to provide equipment, not to provide a service of which the equipment was but a part.
 
 
 17
 The judgment of the tax court is affirmed.
 
 
 
 [1]
 Musco, Inc. originally claimed the tax credits at issue. Thereafter, Musco, Inc. merged with Sports Acquisition Co. to form Musco Sports Lighting, Inc. We will refer to both Musco, Inc. and Musco Sports Lighting, Inc. as Musco
 
 
 [2]
 Unless otherwise noted, all references are to the Internal Revenue Code in effect during the relevant time period