ESTATE of Joseph A. VAK, Deceased, Joseph R. Vak, Personal Representative, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 91–3646.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Sept. 1, 1992.

Nicholas K. Niemann, Omaha, Neb., argued, for petitioner.

Christine A. Grant, Washington, D.C., argued (James A. Bruton, Gary R. Allen and Ann B. Durney, on the brief), for respondent.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

HANSEN, Circuit Judge.

The Estate of Joseph A. Vak (taxpayer), appeals from a decision of the tax court finding in favor of the Commissioner of the Internal Revenue (IRS). *See Estate of Joseph A. Vak*, 62 T.C.M. (CCH) 942, T.C.M. (P-H) 91,503 (1991). We reverse and remand this matter to the tax court.

* The Honorable ELSIJANE TRIMBLE ROY, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

## I. FACTS AND TAX COURT DECISION

This is a gift tax case. On January 2, 1981, Joseph A. Vak (Joseph A.) created an irrevocable trust with 2,757 shares of stock in Joe Vak Farms, Inc. Vak's son, Joseph R. Vak (Joseph R.), and daughter-in-law, Julie A. Vak (Julie), were named joint trustees. Joseph A. retained the power to remove any trustee at any time, with or without cause, and to appoint a successor trustee, provided that any successor trustee was independent, i.e., not related or subordinate to Joseph A. within the meaning of § 672(c) of the Internal Revenue Code. The total beneficial interest in the trust was represented by 100 beneficial certificates (each representing a one percent pro rata interest in income and corpus), all of which were initially issued to Joseph A. No beneficiaries other than Joseph A. were specifically named in the trust agreement.

The trustees could elect to distribute or accumulate current income, in whole or in part, in their discretion. The trustees also had an unrestricted sprinkling power among the holders of the beneficial certificates for both corpus and income. No beneficiary was entitled to any distribution of income or corpus as a matter of right until the termination of the trust. Upon termination, the corpus and accumulated income was to be distributed to the holders of the beneficial certificates according to their respective proportionate shares of the certificates. The trust term was for 25 years unless shortened or lengthened by the trustees.

On the same day the trust was created, January 2, 1981, Joseph A. transferred 50 of the 100 total beneficial certificates to his three grandchildren (James, Jarwyn, and Joseph Adam), $16\frac{2}{3}$ certificates to each, to be held jointly with their father Joseph R. On January 2, 1982, Joseph A. transferred an additional 23 beneficial certificates (5 to Joseph R. and Julie as tenants in common and 6 each to James, Jarwyn, and Joseph Adam individually). There is no suggestion by the parties or in the trust agree-

ment that Joseph A. had the power to recall a beneficial certificate once transferred.

Joseph A. filed a gift tax return for the calendar quarter ending in March of 1981 for the January 1981 transfer of the 50 certificates. The return valued those certificates at $193,560 and remitted $2,859 in tax due. Joseph A. also filed a gift tax return for the calendar quarter ending in March of 1982 for the January 1982 transfer of the 23 certificates. The return valued those 23 certificates at $89,038 and asserted that no tax was due. Subsequently, Joseph A. and the IRS filed stipulations with the United States Tax Court regarding these tax returns. With respect to the 1981 transfer the parties stipulated that an overpayment of $2,859 had been made. Further, the following language originally contained in that stipulation was deleted by the parties: "It is further stipulated that the purported gift by the petitioner to James Vak, Jarwyn Vak and Joseph Adam Vak of 50% interest in the Joseph A. Vak Trust is an incomplete lifetime transfer for gift and estate tax purposes." With respect to the 1982 transfer the parties stipulated that there was no deficiency or overpayment for the tax year 1982. The tax court entered decisions in accordance with the stipulations.

On January 16, 1984, Joseph R. was named conservator and guardian for Joseph A. On February 18, 1985, the Perkins County Court, Nebraska, granted Joseph R.'s petition to amend the trust to prohibit Joseph A. from removing any trustee and appointing a successor trustee and to limit the sprinkling power to exclude Joseph A. as an eligible distributee. The court also authorized Joseph R. to make and execute gifts to Joseph R. and his family of all or part of the remaining 27 beneficial certificates held by Joseph A.

On February 18, 1985, and again on November 1, 1985, the trustees purported to cancel Joseph A.'s 1981 and 1982 transfers of the beneficial certificates. On November 1, 1985, Joseph R. assigned 25 certificates to Joseph R. and Julie as tenants in common and 25 certificates each to James, Jarwyn, and Joseph Adam.

The tax court found that the gift of the stock became complete on February 18, 1985, when, in the tax court's view, the county court approved the termination of all of Joseph A.'s power over and beneficial interest in the trust. The tax court also found that the cancellation of the 1981 and 1982 beneficial certificates was ineffectual because the state court had given Joseph R. the power only to transfer the 27 certificates retained by Joseph A. The tax court valued the stock at its full fair market value for 2,757 shares, which was a controlling interest in the corporation, as of February 18, 1985, and rejected the taxpayer's argument that the stock's fair market value should be discounted as the portions assignable to each trust beneficiary were not controlling interests. Finally, the tax court assessed an addition to tax pursuant to 26 U.S.C. § 6660 because of the understatement of the value of the gift.

We review the tax court's findings of fact for clear error. *Musco Sports Lighting, Inc. v. Commissioner,* 943 F.2d 906, 907 (8th Cir.1991). The tax court's conclusions of law and its application of the relevant law to the facts are reviewed de novo. *Id.*

## II. DISCUSSION

The taxpayer argues that either (a) the gift of stock to the trust was complete on January 2, 1981; (b) the 1981 and 1982 gifts of beneficial certificates were completed partial gifts; or (c) that the events of February 18, 1985, did not result in a complete gift because Joseph A. either (1) retained the right to receive distributions or (2) retained the ability to change the beneficiaries or the beneficiaries' relative interests.

### A. Relevant Law

Title 26, U.S.C. § 2501(a) (1988), generally imposes a tax on the transfer of property by gift. The tax imposed by § 2501 applies to transfers in trust or otherwise and gifts that are direct or indirect. 26 U.S.C. § 2511(a) (1988). A gift is complete

if the donor retains no power to change the disposition of the property. Treas. Reg. § 25.2511–2(b) (as amended in 1983). If the donor retains any power over the property's disposition, the gift may be wholly incomplete or partially complete and partially incomplete. *Id.* A gift is incomplete if the "donor reserves the power to revest the beneficial title to the property in himself." Treas. Reg. § 25.2511–2(c) (as amended in 1983). "A gift is also incomplete if and to the extent that a reserved power gives the donor the power to name new beneficiaries or to change the interests of the beneficiaries as between themselves." *Id.* The relinquishment (other than by the death of the donor) of a power to change the beneficiaries completes the gift. Treas. Reg. § 25.2511–2(f) (as amended in 1983).

### B. Issues Not Presented To The Tax Court?

█ The IRS argues that some of the issues raised on appeal were not raised in the tax court and should not be considered. The issues addressed by the tax court were: (1) when was the transfer complete for gift tax purposes; (2) whether the stock or the certificates is the gift; (3) the value of the property transferred; and (4) whether the addition under § 6660 should be assessed. The taxpayer concedes that it is arguing its case differently on appeal than it did before the tax court but contends that the same basic issues are being addressed.

The general rule is that an appellate court will not consider an issue not raised in the trial court except where the obvious result would be a miscarriage of justice or where failure to consider the issue would be inconsistent with substantial justice. *See Gregory ex rel. Gregory v. Honeywell, Inc.,* 835 F.2d 181, 184 (8th Cir.1987). "Depending on the facts of an individual case, however, this court has the discretion to consider an issue for the first time on appeal." *Sanders v. Clemco Indus.,* 823 F.2d 214, 217 (8th Cir.1987) (citing *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). An issue may be considered if it presents a legal question that has been fully briefed and argued by the parties. *See In re Modern Textile, Inc.,* 900 F.2d 1184, 1191 (8th Cir.1990). " 'The real question should be whether the new argument is such as to raise a new *issue.*' " *Universal Title Ins. Co. v. United States,* 942 F.2d 1311, 1314 (8th Cir.1991) (quoting *In re Osweiler,* 346 F.2d 617, 621, 52 C.C.P.A. 1427 (1965)).

In its decision, the tax court stated that the parties agreed that the creation of the trust and the 1981 and 1982 transfers of beneficial certificates were not taxable events and that the dispute was over whether the transfer was complete on February 18, 1985, or November 1, 1985. The taxpayer's tax court petition does not assert that a complete gift of the stock occurred on January 2, 1981, or that partial complete gifts of the beneficial certificates occurred on January 2, 1981, and January 2, 1982. Paragraphs 5(c), 5(d), and 5(e) of the tax court petition assert that a completed gift of 100 beneficial certificates occurred on November 1, 1985. The petition is based on the assumption that the trustees' revocation of the 1981 and 1982 transfers was effective. The taxpayer's argument before this court that the 1981 and 1982 transfers constituted partially completed gifts is consistent with its position before the tax court that the actual transfer of a certificate completes the gift as to that certificate.

The parties submitted a stipulation of facts and documents to the tax court on October 23, 1990. The stipulation does not discuss whether the 1981 and 1982 transfers were complete or incomplete gifts. Attached to that stipulation were the stipulations between the IRS and Joseph A. following the 1981 and 1982 transfers. We agree with the taxpayer that those stipulations only discuss whether any tax is owing, not whether the transfers were completed gifts. In fact, the stipulation relating to the 1981 transfer deletes the language originally included that the gift of the 50 certificates was "an incomplete lifetime transfer."

We are unable to find any specific support in the record for the tax court's state-

ment that the parties agree that the 1981 and 1982 transfers were not partially completed taxable gifts. In fact, the striking of that language from the 1981 stipulation suggests otherwise. We also find, however, that nothing in the record suggests that the taxpayers explicitly argued to the tax court that the 1981 and 1982 transfers were partially completed taxable gifts.

After considering the matter and after a thorough review of the briefs, we find that, in the exercise of our discretion, we should consider the taxpayer's arguments that partially completed gifts occurred in 1981 and 1982. The issue of whether the 1981 and 1982 transfers of the beneficial certificates were partial complete gifts was implicitly raised and not fully argued by the taxpayer because of its position that the cancellation of the certificates was effective, and the issue was not addressed by the tax court because of its mistaken belief that the parties agreed that the 1981 and 1982 transfers were not completed gifts. The failure to address these legal issues would be inconsistent with substantial justice.[1] We also address whether the 1981 transfer of stock to the trust constituted a complete gift.

### C. The 1981 Transfer of Stock To The Trust

■ We find no merit in the taxpayer's argument that the transfer of the stock to the trust in 1981 was a completed gift. The taxpayer relies on Revenue Ruling 77–378 (1977). In Revenue Ruling 77–378 a completed gift was found when the grantor created an irrevocable trust, with the corpus to be distributed to the grantor's spouse and children upon the grantor's death. The trust agreement empowered the trustee to distribute income and corpus to the grantor during the grantor's lifetime

in the trustee's absolute and uncontrolled discretion. The grantor had no power to direct the trustee to distribute income or corpus to him.

The fundamental difference between the trust involved in Revenue Ruling 77–378 and the trust involved in this case is that in this trust the holders of the beneficial certificates were entitled to the distribution of the trust corpus at the termination of the trust. All of the certificates were initially vested by the trust agreement in Joseph A., the grantor. Nothing in the trust agreement or otherwise required Joseph A. to transfer any of those certificates to anyone else.[2] Accordingly, Joseph A. retained the ability to revest the beneficial title to the property in himself within the meaning of § 25.2511–2(c) by simply not giving up any of the certificates. Cf. Treas. Reg. § 25.2511–2(b) ("For example, if a donor transfers property to another in trust to pay the income to the donor or accumulate it in the discretion of the trustee, and the donor retains a testamentary power to appoint the remainder among his descendants, no portion of the transfer is a completed gift."). If Joseph A. had retained all of the certificates, the trustees would not have had the power under the terms of the trust to distribute income or corpus to anyone but him.

### D. The 1981 and 1982 Transfers of Beneficial Certificates

■ We do, however, agree with the taxpayer that the 1981 and 1982 transfers of beneficial certificates completed part of the gift. After the 1981 transfer, Joseph A. held 50 of the certificates and others held the remaining 50. Joseph A. had no power to recall the transferred 50 certificates. Accordingly, at that point Joseph A. did not have the power to revest in himself the

---

1. The IRS asserts that evidence is available in the administrative record as to why the parties stipulated that no completed gifts occurred in 1981 and 1982 but was not proffered because that issue was not raised. The IRS, however, has not specifically described this evidence or what effect it would have on the legal consequences of the transfers of the beneficial certificates. The IRS does not dispute the facts as set forth in Part I of this opinion.

2. The trust agreement provides that "[t]he grantor retains no rights of reversion in either the income or the corpus except to the extent of the proportionate share of interest in income and corpus represented in units of beneficial interest, if any, he may hold." Declaration of trust at para. VIII.

beneficial ownership of that fifty percent of the trust assets which he had given away to others. We note that even though the trustees could have given Joseph A. all of the trust corpus under the discretionary sprinkling power, that discretionary power is not sufficient under Revenue Ruling 77–378 to find that the transfer of the certificates is an incomplete gift. Additionally, although Joseph A. would have had the power to create new beneficiaries or to give an existing beneficiary a greater proportionate share of the total trust through further gifts of the certificates he retained, he could not deprive a beneficiary of the certificates that that beneficiary already possessed or of the proportionate share of the trust represented by those certificates. *Cf. Camp v. Commissioner,* 195 F.2d 999, 1004 (1st Cir.1952) ("If the trust instrument gives a designated beneficiary any interest in the corpus of the trust property or of the income therefrom, which is capable of monetary valuation, and the donor reserves no power to withdraw that interest, in whole or in part, ... then the gift of that particular interest will be deemed to be complete."). Thus, with respect to the certificates he transferred, Joseph A. relinquished the power to change the beneficiaries and the power to revest the beneficial ownership of the trust assets attributable to those certificates in himself. Accordingly, the gift was complete to the extent of the certificates Joseph A. transferred to others.

This holding is consistent with Revenue Ruling 72–571 (1972). In 1958, *A* transferred corporate stock valued at 100x to himself as trustee for his son. The trust provided that upon termination of the trust in 1978 the stock would be returned to *A* if it had not been sold. If the stock had been sold, 100x dollars would be paid to *A* and any remaining corpus to *A*'s son. In 1966, *A* resigned as trustee and a successor trustee was appointed. The ruling holds that a gift occurred in 1966 under § 25.-2511–2(f) when *A* resigned as trustee, thus relinquishing his discretionary power to retain the stock in trust and revest the beneficial ownership of the stock in himself upon the termination of the trust. Likewise, Joseph A.'s transfer of the beneficial certificates relinquished his discretionary power to revest the stock attributable to those certificates in himself upon the termination of the trust.[3]

The IRS argues that Joseph A.'s power to change the trustees was sufficient to give him complete control over the trust and to allow him to direct the distribution of the trust assets to himself under the sprinkling power, thus rendering the entirety of the gift incomplete until he gave up that power. We disagree. While Joseph A. had unlimited power to remove the trustees, he could only replace them with independent trustees, i.e., trustees who were not related or subordinate parties under 26 U.S.C. § 672(c). The IRS overstates its position when it contends that "Mr. Vak had the power to replace the trustees with individuals who would do his bidding." IRS brief at 14.[4]

We conclude that the gift was complete with respect to 50 certificates on January 2, 1981. The same logic applies to Joseph A.'s transfer of 23 certificates on January 2, 1982.

### E. 1985

 We also conclude that the final completion of the gift of the remaining 27

---

**3.** The IRS argues, citing *Smith v. Shaughnessy,* 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690 (1943), and *Robinette v. Helvering,* 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700 (1943), that the possibility that Joseph A., who was 95 in 1985, would live until the expected termination of the trust in 2006 was so remote as to render valueless his right to receive a proportionate distribution from the trust upon termination. In *Smith,* a 72 year-old grantor created a trust to pay the income to his 44 year-old wife for her life, and upon her death the corpus reverted to the grantor if living, and if not, to the remaindermen designated by his wife in her will. The United States Supreme Court held that the gift was complete except for the value of the grantor's reversionary interest. *Smith,* 318 U.S. at 181, 63 S.Ct. at 547. While the possibility of Joseph A. living until 2006 may have been remote at the time the transfers were made, we cannot conclude that the possibility was nonexistent or that his interest was incapable of valuation.

**4.** The parties have not discussed the impact of 26 U.S.C. §§ 674(a) & (c) on this issue. We decline to do so.

certificates occurred on November 1, 1985. We agree with the tax court that the trustees had no authority to revoke the 1981 and 1982 transfers of certificates. Joseph R., as conservator and guardian, had the power to transfer the remaining 27 certificates, which he effectively did on November 1, 1985.[5] We disagree, however, with the tax court's conclusion that February 18, 1985, is the relevant date for the 27 certificates because that was the date Joseph R. was given power over the certificates. Joseph R. was given the power to transfer the certificates in his capacity as conservator and guardian. That power was not conveyed to him as part of the amendments to the trust agreement but rather as part of the court's power to authorize a conservator to make a gift of the ward's assets if in the best interests of the ward. *See* Neb. Rev.Stat. §§ 30–2637(3) & (4) (1990). The tax court viewed the county court's grant of this power to Joseph R. as taking away the power of Joseph A. to exercise control over the certificates. The county court's action, however, is more properly characterized as authorizing Joseph R. to act for Joseph A. with respect to the transfer of the remaining 27 certificates.

The tax court also reasoned that although Joseph A. held title to the 27 certificates after February 18, 1985, he had eliminated himself as an eligible distributee and thus none of the trust's corpus or income could be distributed to him. Under the clear terms of the trust amendment, however, Joseph A. gave up only the right to receive distributions under the sprinkling power. He did not give up the right to receive a proportionate share of the trust corpus and accumulated income upon the termination of the trust. If the trust had terminated between February 18, 1985, and November 1, 1985, Joseph A. would have been the holder of the 27 beneficial certificates entitled to the proportionate share of the trust corpus and accumulated income represented by those certificates. Just as Joseph A. could revest part of the trust corpus in himself by retaining the certifi-

cates, Joseph R. as conservator/guardian acting on behalf of Joseph A., could retain the certificates and revest part of the trust corpus in Joseph A. Thus, the gift of the 27 certificates would not be complete until those certificates were actually transferred to someone other than Joseph A. or his conservator.

**F. Other Issues**

Because of our resolution of the question of when the gift became complete, we need not address the additional contentions raised that the tax court erred in assessing the tax on the value of the stock rather than on the value of the beneficial certificates, in valuing the stock at its full market value, and in imposing the undervaluation penalty. The tax court should reconsider its disposition of these issues on remand.

**III. CONCLUSION**

Accordingly, we reverse the tax court's conclusion that a completed gift occurred on February 18, 1985, and remand for further proceedings consistent with this opinion.

---

**5.** We recognize that some ambiguity exists as to whether the November 1, 1985, transfer effectively transferred the remaining 27 certificates, and if so, as to whom the 27 certificates were actually transferred. We leave those questions to the tax court on remand.