# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 13-1780

———————————————

Harry Robert Haury

*Appellant*

v.

Commissioner of Internal Revenue

*Appellee*

——————————

Appeal from the United States Tax Court

——————————

Submitted: January 13, 2014
Filed: May 12, 2014

——————————

Before LOKEN, MURPHY, and SMITH, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Harry Haury, a software engineer, filed no federal individual income tax return for 2007. The Commissioner of Internal Revenue issued a notice of deficiency in May 2010, alleging unpaid taxes, penalties, and interest of more than $250,000 based on a substitute return prepared by the Internal Revenue Service. The deficiency asserted taxable salary income of $149,216 and taxable withdrawals from Haury's Individual Retirement Account ("IRA") totaling $434,964. Haury responded by petitioning the Tax Court for redetermination of the deficiency, filing a return for

2007 that reported, as relevant here, $149,217 in wage income, $319,964 in taxable IRA distributions, and a business bad debt loss of $413,156. After a trial on mostly stipulated facts, the Tax Court rejected Haury's claim that he made an offsetting $120,000 rollover IRA contribution, denied him a bad debt deduction because the worthless loans in question were nonbusiness bad debts, and determined a deficiency of $225,284.40 in unpaid taxes, $43,992.99 for failure to file a timely return, and $8,748.35 for failure to pay estimated tax. Haury appeals, challenging the Tax Court's IRA rollover and business bad debt rulings. We reverse on the IRA rollover issue, affirm on the bad debt issue, and remand for redetermination of the deficiency.

**A. The IRA Rollover Issue.** Haury developed "workflow automation and document imaging" technology in the late 1990s and licensed the technology to several related companies using the name "Nu Paradigm." By 2007, two of these companies, NuParadigm Government Systems, Inc. ("NPGS") and NPS Systems, Inc., were competing as subcontractors for a substantial government contract. To fund product development and working capital needs, Haury made secured loans to the two companies in 2006 and 2007. Three loans in April, May, and July 2007 were funded using distributions withdrawn from Haury's IRA account. NPS Systems and NPGS issued demand promissory notes payable to the IRA trustee "on behalf of Harry Haury's IRA account number." Haury was less than 59 ½ years old that year, so his IRA distributions were taxable as ordinary income subject to a 10% additional tax. See 26 U.S.C. ("I.R.C.") §§ 408(d)(1), 72(t). Haury also made a $120,000 contribution to his IRA account in April 2007. The issue on appeal is whether that contribution was a qualifying "rollover" that reduced Haury's 2007 taxable IRA-distribution income by $120,000. As transaction timing is critical to § 408(d) issues, we summarize Haury's withdrawals from and contributions to his IRA account in 2007:

-2-

| Transaction Date | Withdrawals | Contributions |
|---|---|---|
| February 15, 2007 | - $120,000.00 | |
| April 9, 2007 | - $168,000.00 | |
| April 30, 2007 | | $120,000.00 |
| May 14, 2007 | - $100,000.00 | |
| July 6, 2007 | - $46,933.06 | |
| October 25, 2007 | - $31.32 | |
| *Total:* | *- $434,964.38* | *$120,000.00* |

An individual may exclude an IRA distribution from taxable income if it is "rolled over" into an IRA account. The entire amount is excluded if it "is paid into an individual retirement account . . . for the benefit of such individual not later than the 60th day after the day on which he receives the payment or distribution." I.R.C. § 408(d)(3)(A)(i). An amount less than the entire distribution is likewise excluded if it is paid into an IRA. I.R.C. § 408(d)(3)(D). The rollover contribution exception does not apply if the distributee used the exception to exclude another distribution in the year prior to the date of the distribution in question. I.R.C. § 408(d)(3)(B).

Proceeding *pro se*, Haury explained at trial that his April 30 $120,000 contribution came as the result of repayment by the companies of a prior loan funded by his IRA account. Seizing on the fact that the $120,000 April 30 contribution matched a $120,000 February 15 withdrawal, the Commissioner argued that it was not a qualifying rollover contribution because it was not made within the 60-day time limit in § 408(d)(3)(A)(i). The Tax Court agreed and included the $120,000 in determining the amount of Haury's taxable income from IRA distributions that year.

On appeal, now represented by counsel, Haury argues that the $120,000 IRA contribution on April 30 was a qualifying partial rollover of the $168,000 IRA distribution made on April 9, less than 60 days before the contribution. That the 60-

day limit in § 408(d)(3)(A)(i) was satisfied is clearly correct, as government counsel reluctantly acknowledged at oral argument. The government nonetheless asserts two feeble defenses to this contention. First, it argues that the partial rollover issue was forfeited because Haury failed to argue it to the Tax Court. Frankly, we are appalled by the unfairness of this contention. At trial, the *pro se* Haury simply explained the facts, as the presiding Tax Court judge directed him to do. It was the Commissioner's attorneys who matched up the two $120,000 transactions and, ignoring the obviously applicable partial rollover provision in § 408(d)(3)(D), asserted that the rollover contribution was untimely. The issue before the Tax Court was whether this was a qualifying rollover contribution under I.R.C. § 408(d)(3). The Tax Court was obligated to fairly apply that statute to the facts presented, particularly for a taxpayer who is *pro se*. See Transp. Labor Contract/Leasing, Inc. v. Commissioner, 461 F.3d 1030, 1034 (8th Cir. 2006). Though we generally do not consider issues not raised below, as the Supreme Court said in a tax case many years ago, we should "where injustice might otherwise result." Hormel v. Helvering, 312 U.S. 552, 557 (1941). We conclude this is such a case.

Second, the Commissioner argues that we cannot grant relief on the basis of a qualifying partial rollover because Haury failed to prove that he had not made a prior rollover contribution within one year of April 30, 2007. This contention is factually without merit, if not downright silly. As government counsel conceded at oral argument, the IRS had access to the transactions in Haury's IRA account during the year prior to April 30, 2007. Had there been a prior rollover contribution, it would have been a complete defense to Haury's rollover contention, because the one-year limitation in § 408(d)(3)(B) applies to all rollover contribution claims, whether complete or partial. Had the IRS's exhaustive review of the transactions in Haury's IRA account revealed a disqualifying prior rollover contribution during the prior year, the Commissioner would have asserted this defense before the Tax Court, making the 60-day limit the Commissioner in fact asserted unnecessary. As the Commissioner did not raise the one-year issue, Haury had no need to address it at trial.

-4-

As the above chart makes clear, Haury's April 30, 2007 IRA contribution of $120,000 was made well within 60 days of the April 9 distribution of $168,000. Therefore, it was a qualifying partial rollover contribution under § 408(d)(3)(D) and Haury is entitled to reduce his taxable 2007 IRA distributions by $120,000. The Tax Court's contrary ruling is reversed.

**B. Worthless Business Debt Deduction.** Individual taxpayers may deduct from taxable ordinary income "any debt which becomes worthless within the taxable year," but not if it is a "nonbusiness debt." I.R.C. § 166(a)(1), (d)(1)(A).[1] A nonbusiness debt is one that was *not* created or acquired in connection with, or incurred in, the taxpayer's "trade or business." § 166(d)(2). The Treasury Regulations provide that a worthless debt falls within the business debt "exception" if the relation between the loss caused by its becoming worthless, and the trade or business of the taxpayer, "is a proximate one." Treas. Reg. § 1.166-5(b)(2). In United States v. Generes, 405 U.S. 93 (1972), the Supreme Court resolved a conflict in the circuits over how to construe the word "proximate" -- a word the Court described as "not the most fortunate," id. at 105 -- when the taxpayer is owed a worthless debt by a business in which he is both a shareholder and an employee. The taxpayer's "status as a shareholder was a nonbusiness interest," the Court explained, whereas his "status as employee was a business interest." Id. at 100-01. In these circumstances, to determine whether the bad debt has a proximate relation to the taxpayer's trade or business, as the Treasury Regulations require, the Court held that the "proper measure" is the taxpayer's "dominant motivation" in making or guaranteeing the loan. Id. at 103-04.

---

[1] Worthless nonbusiness debts may be deducted, but only as capital losses subject to the greater limitations found in I.R.C. § 1211. See 26 C.F.R. ("Treas. Reg.") §§ 1.166-5, 1.1211-1.

In this case, Haury made four secured working capital loans to NPS Systems and NPGS between June 2006 and July 2007:

| Loan Date | Amount | Borrower |
| --- | --- | --- |
| June 6, 2006 | $107,505.69 | NPS Systems |
| April 10, 2007 | $168,000.00 | NPS Systems |
| May 15, 2007 | $100,000.00 | NPGS |
| July 6, 2007 | $46,933.06 | NPGS |
| *Total:* | *$422,438.75*[2] | |

At the time he made the loans, NPS Systems, operated by NPGS, was working as a subcontractor to obtain a $32 million government contract. Haury testified that he loaned money "as an employee of the company to . . . keep the company afloat . . . [and to] fund[] working capital to allow us to continue operating" during the development phase of the contract. On October 5, 2007, believing "the company was in good . . . and improving financial condition," Haury helped NPGS obtain an additional $500,000 loan from Tim Swank by subordinating his secured loans to Swank's. In December 2007, NPS System's prime contractor was "frozen out" of the government contract. With NPS Systems deprived of its only source of business, Haury requested payment of his loans. NPGS's president responded, "it is ridiculous to assume [the notes you hold] would ever be repaid."

At the time of trial, Haury was president, secretary, and sole member of the board of directors of NPS Systems, and CEO and one of three directors of NPGS. There was testimony that he was not in charge of day-to-day operations in 2007, and

[2]Haury explains that the $413,156 bad debt deduction claimed on his self-prepared 2007 return reflected a mathematical error; $422,439 is the correct amount. The discrepancy is irrelevant given our resolution of the issue.

his responsibilities as "employee" in 2007 are unclear. It is undisputed that he received salaries of $136,916.44 from NPGS and $12,300.98 from NPS Systems in 2007, his sole source of wage or salary income. The record does not clarify his ownership interests in the two corporations, but it is evident that Haury and his wife held substantial, most likely controlling ownership interests.

Based on this evidence, the Tax Court found that Haury made bona fide loans to NPGS and NPS Systems that became totally worthless in December 2007. However, applying the "dominant motivation" standard of Generes, the Tax Court found that the worthless loans were nonbusiness debts because "[p]rotection of [Haury's] investment interests in the companies, rather than protection of his salary, was the dominant motivation for the loans." Accordingly, the Tax Court denied Haury's claim of a worthless-debt deduction under I.R.C. § 166(a).

On appeal, Haury argues the Tax Court erred because his substantial salary, lack of other sources of income, and minimal investment make this case more like Litwin v. United States, 983 F.2d 997 (10th Cir. 1993), where the Tenth Circuit affirmed the grant of a worthless business debt deduction to a principal shareholder-CEO, than Generes, where the Supreme Court held that a substantial shareholder and part-time employee had failed to prove dominant business motivation as a matter of law. "The question whether a debt is a nonbusiness debt is a question of fact. Thus, we review for clear error the Tax Court's determination that [Haury's] loans to [NPGS and NPS Systems] were nonbusiness debts." Bell v. Commissioner, 200 F.3d 545, 547 (8th Cir. 2000) (quotation omitted).

On this record, there was no clear error. Haury's nonbusiness motivations for making the loans included, at a minimum, his considerable if unquantified equity interests in NPGS and NPS Systems, and his interest in enhancing the return on his investment in the licensed technology. His interest as an employee is far from clear.

He failed to prove any role in the 2007 day-to-day operations, and his action in subordinating his own loans to persuade Swank to invest makes his role in 2007 look more like an owner-investor than an employee. No doubt Haury made the loans to protect the substantial salaries he received in 2006 and 2007, but on this minimal record the Tax Court was entitled to view the 2007 salary as a form of return-on-investment that did not prove Haury's dominant motivation was to protect a business interest as an employee. "We will not find clear error if the tax court's account is plausible in light of the record viewed in its entirety, even if we would have weighed the evidence differently." Musco Sports Lighting, Inc. v. Commissioner, 943 F.2d 906, 907 (8th Cir. 1991) (quotation omitted). The Tax Court did not clearly err in finding that Haury failed to prove that his dominant motivation for making the four loans in question made them deductible bad debts when they became worthless in December 2007.

The decision of the Tax Court is reversed in part, and the case is remanded for a redetermination of the deficiency in accordance with this opinion.

_____